CITY OF ONALASKA, City Clerk, and Mayor of Onalaska, Petitioners-Respondents,

v.

State of Wisconsin LABOR & INDUSTRY REVIEW COMMISSION, Respondent,

David B. BENTZEN, Appellant.†

Court of Appeals

No. 83–1229. Submitted on briefs January 30, 1984.— Decided July 26, 1984.
(Also reported in 354 N.W.2d 223.)

For the appellant the cause was submitted on the briefs of *James G. Birnbaum* and *Ellen M. Frantz* and *Johns, Flaherty & Gillette, S.C.* of La Crosse.

† Petition to review denied.

For the petitioners-respondents the cause was submitted on the brief of *William A. Shepherd,* assistant city attorney.

Before Gartzke, P.J., Dykman, J., and Rudolph T. Randa, Reserve Judge.

GARTZKE, P.J.   David Bentzen appeals from a judgment reversing an order by the Labor and Industry Review Commission that the City of Onalaska reinstate him to his position of police trainee.  LIRC concluded that Bentzen's discharge constituted discrimination because of his arrest record, contrary to sec. 111.32(5)(h)2., Stats. 1979–80.[1]  The issue is whether an employer discriminates if the employer discharges an employe because the employer believes on the basis of its investigation that the employe has engaged in an illegal activity. The trial court held that such a discharge is not discrimination and reversed the order.  We agree with the trial court and therefore affirm.

LIRC's factual findings are unchallenged.  The city hired Bentzen as a police trainee.  In March 1979 the city sent him to a training course.  April 29, 1979 the Onalaska police department arrested Bentzen's brother-in-law for speeding, eluding a police officer and racing. The city claims that in response to a question by an officer, Bentzen said he supposed he was the person with whom his brother-in-law was racing.  Bentzen resigned in May 1979 when the police chief told him if he did not agree to resign upon completing the course, he would be fired immediately.  Bentzen was subsequently charged with racing, contrary to sec. 346.94(2), Stats., and was found not guilty.

LIRC found that the city would not have fired Bentzen but for the alleged racing incident.  LIRC concluded that Bentzen showed by a preponderance of the evidence that

---

[1] Unless otherwise indicated all references are to Stats. 1979–80.

his discharge was based on the city's belief that Bentzen had engaged in an illegal activity by racing on the highway with another vehicle. The description of the city's belief is a finding of fact even though LIRC labeled it a conclusion of law. We ignore the label and treat it as a finding of fact. *Connecticut General Life Ins. Co. v. DILHR*, 86 Wis. 2d 393, 405, 273 N.W.2d 206, 211 (1979).

LIRC held that the city had discriminated against Bentzen because of his arrest record even though he had not been arrested or charged with criminal activity when he resigned. LIRC so held because "arrest record" in sec. 111.32(5)(h), Stats., includes "information indicating that a person has been questioned." LIRC found that Bentzen had been questioned and asked to give a statement, an investigation into his conduct had been completed, and a criminal charge was imminent at the time of his discharge.

The trial court did not reach the issue whether the city had terminated Bentzen's employment because of the circumstances surrounding his resignation. Because we accept the trial court's rationale, we do not reach the termination issue.

LIRC's orders under the Wisconsin Fair Employment Act are judicially reviewed under ch. 227, Stats. Sec. 111.37, Stats. The scope of our appellate review under sec. 227.20 is identical to that of the trial court. *Frito-Lay, Inc. v. Labor & Industry Review Comm.*, 95 Wis. 2d 395, 400, 290 N.W.2d 551, 555 (Ct. App. 1980), *aff'd*, 101 Wis. 2d 169, 303 N.W.2d 668 (1981).

It is unlawful for an employer to discriminate against an employe. Sec. 111.325, Stats. One form of discrimination is to discharge an employe because of the person's arrest record. Sec. 111.32(5)(h) provides in part: "It is discrimination because of arrest record or conviction record: . . . 2. For any employer . . . [to] terminate any person from employment . . . because such person

has an arrest record . . . ." Section 111.32(5)(h) further provides:

The term "arrest record" includes, but is not limited to, information indicating that a person has been questioned, apprehended, taken into custody or detention, held for investigation, arrested, charged with, indicted or tried for any felony, misdemeanor or other offense pursuant to any law enforcement or military authority.[2]

Resolving the issue before us involves applying the statutory definition of "arrest record" to the facts. The application of a statute to a particular set of facts presents a question of law. *Bucyrus-Erie Co. v. ILHR Department,* 90 Wis. 2d 408, 417, 280 N.W.2d 142, 146–47 (1979). If, as here, the material facts are undisputed, a reviewing court may substitute its judgment on the law for that of the agency. *Hall Chevrolet Co., Inc. v. Dept. of Revenue,* 81 Wis. 2d 477, 483, 260 N.W.2d 706, 709 (1978).

We reject Bentzen's contention that we should defer to LIRC's application of the statute to the facts. We should hesitate to substitute our judgment for the agency's on a question of law if the agency's interpretation has a rational basis and it does not conflict with the statute's legislative history, prior appellate decisions, or the constitution. *Bucyrus-Erie,* 90 Wis. 2d 408, 417, 280 N.W.2d 142, 147 (1979). LIRC's opinion, however, contains no discussion of the issue whether the city's belief based on its own investigation provided a nondiscriminatory reason for his discharge. Without knowing LIRC's reasons for the way it applied the statute, we cannot determine whether LIRC's interpretation has a rational basis. We therefore proceed to apply the statu-

---

[2] The definition of "arrest record" is now contained in sec. 111.32(1), Stats. 1981–82, and is unchanged. Discharge on the basis of arrest record is prohibited by secs. 111.322(1) and 111.321.

tory definition of arrest record without deference to LIRC's approach.

To discharge an employe because of information indicating that the employe has been questioned by a law enforcement or military authority is to rely on an assertion by another person or entity. If, as here, the employer discharges an employe because the employer concludes from its own investigation and questioning of the employe that he or she has committed an offense, the employer does not rely on information indicating that the employe has been questioned, and therefore does not rely on an arrest record, as defined in sec. 111.32(5)(h), Stats. Consequently, the trial court correctly found that the city's discharge of Bentzen was not discrimination.

Accordingly, we affirm the decision of the trial court.

*By the Court.*—Judgment affirmed.

DYKMAN, J. (dissenting). The majority differentiates between information received from third parties and internally-generated information. It concludes that information received from an employe that the employe had engaged in illegal activity is not an "arrest record" as defined by 111.32(5)(h), Stats. (1979–80).

Section 111.32(5)(h), Stats. (1979–80) broadly defines "arrest record." It states that the term "includes *but is not limited to*" a number of actions which would not, at first glance, appear to fit the definition of "arrest record." (Emphasis supplied.) For example, an individual who has been questioned for any offense is defined as having an "arrest record" despite not having been arrested, nor having a record.

I conclude that internally-generated information that an employe has engaged in illegal activity is similar enough to that information received from third parties that LIRC could rationally conclude that the city's ac-

tions fell within the definition of discrimination because of arrest record.

The majority recognizes that we should not substitute our judgment for that of an agency on a question of law if the agency's interpretation has a rational basis and does not conflict with the statute's legislative history, prior appellate decisions, or the constitution. The majority concludes, however, that because LIRC did not discuss the issue whether a discharge based upon an internal investigation is discriminatory, no deference should be given LIRC's interpretation of the law.

I conclude that LIRC necessarily determined that the city's actions fell within the area of prohibited conduct.

LIRC said:

"This definition (of "arrest record") is so broad that Bentzen's situation clearly falls within the definition of 'arrest record.' Bentzen was asked to give a statement about his alleged involvement in the racing incident for which his brother-in-law had been apprehended on the night of April 29. He was in effect questioned within the meaning of this provision . . . ."

We should defer to LIRC's interpretation of sec. 111.32 (5) (h), Stats. (1979–80), because it is rational. *Bucyrus-Erie Co. v. ILHR Dept.*, 90 Wis. 2d 408, 417, 280 N.W.2d 142, 147 (1979). Even if the question is very nearly one of first impression, we are to accord the agency's interpretation "due weight." *Berns v. Wis. Employment Relations Comm.*, 99 Wis. 2d 252, 261, 299 N.W.2d 248, 253 (1980). Even if we give no weight to the agency's interpretation of sec. 111.32(5) (h), I conclude that Bentzen's termination for engaging in illegal activity falls within the broad prohibition of sec. 111.32 (5) (h) 2. Accordingly I dissent from the majority opinion.

The city argues that because Bentzen was a probationary employe, it should be permitted to discharge him

at the first sign of impropriety.[1] It contends that this is necessary because of the vital place law enforcement plays in society. The legislature presumably was aware of the need for propriety on the part of law enforcement personnel when it passed the Wisconsin Fair Employment Act. No exception appears in the act for law enforcement agencies.[2] It is not up to this court to generate such an exception.

---

[1] Because the majority decided this case in favor of the city on another ground, it did not have to address this argument.

[2] Section 111.32(5)(h)2.a. and b., Stats. (1979–80) provide for exceptions not relevant to this appeal.