**2022 WI APP 21**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:      2021AP24

†Petition for Review Filed

Complete Title of Case:

DAVID VEGA,

     PETITIONER-RESPONDENT,†

   V.

LABOR AND INDUSTRY REVIEW COMMISSION,

     RESPONDENT,

PREFERRED SANDS OF WI, LLC,

     RESPONDENT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | April 19, 2022 |
| Submitted on Briefs: | June 30, 2021 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Nashold, JJ. |
|     Concurred: | |
|     Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Dean F. Kelley* of *Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*, Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the petitioner-respondent, the cause was submitted on the brief of *Peter M. Reinhardt* of *Bakke Norman, S.C.*, Menomonie. |

# COURT OF APPEALS
# DECISION
# DATED AND FILED

## April 19, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.** **2021AP24**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CV37

**IN COURT OF APPEALS**

DAVID VEGA,

    PETITIONER-RESPONDENT,

V.

LABOR AND INDUSTRY REVIEW COMMISSION,

    RESPONDENT,

PREFERRED SANDS OF WI, LLC,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Dunn County: ROD W. SMELTZER, Judge. *Reversed.*

Before Stark, P.J., Hruz and Nashold, JJ.

¶1 HRUZ, J. Preferred Sands of Wisconsin, LLC ("Preferred Sands"), terminated David Vega's employment after learning that Vega was a registered sex

offender and after Vega admitted to Preferred Sands that he committed multiple felony-level sexual assaults. Preferred Sands appeals a circuit court order reversing a decision by the Labor and Industry Review Commission (LIRC). LIRC had determined that Preferred Sands wrongfully discriminated against Vega on the basis of his conviction record by terminating his employment due to his status as a registered sex offender, which violated the Wisconsin Fair Employment Act (WFEA), WIS. STAT. §§ 111.31-111.395 (2019-20).[1] LIRC also determined, however, that Preferred Sands lawfully relied on Vega's admissions to Preferred Sands regarding his prior sexual assaults for which he had not yet been convicted. In particular, LIRC found that Preferred Sands would have terminated Vega's employment based solely on its own investigation into Vega's felony-level sexual assaults, and LIRC therefore concluded that Vega was not entitled to reinstatement or back pay. The circuit court reversed LIRC's decision, and Preferred Sands appeals.

¶2      Vega argues that Preferred Sands could not independently investigate his felony sexual assault offenses or rely on his later admissions to Preferred Sands of having committed those offenses because he had entered into deferred prosecution agreements for those offenses, which he contends are part of his "conviction record" as defined under WIS. STAT. § 111.32(3). We disagree. We conclude that Vega's deferred prosecution agreements were not part of his "conviction record" but part of his "arrest record," as defined by § 111.32(1); therefore, Preferred Sands could independently investigate the fact of such offenses pursuant to *Onalaska v. LIRC*, 120 Wis. 2d 363, 354 N.W.2d 223 (Ct. App. 1984). We also conclude that substantial evidence supported LIRC's findings that

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Preferred Sands did not rely on Vega's arrest record when terminating his employment, and that Preferred Sands would have terminated Vega's employment based solely on his admissions to Preferred Sands that he had committed multiple felony-level sexual assaults. Accordingly, we reverse the circuit court's order and reinstate LIRC's ruling.

## BACKGROUND

¶3 In September 2010, Vega began working as a lead quality control tech for Preferred Sands of Minnesota, LLC, which was a manufacturer and provider of frac sand. Shortly thereafter, Vega was charged in Buffalo County with one felony count of second-degree sexual assault of a child and two misdemeanor counts of fourth-degree sexual assault. All of those charges were based on the same probable cause statement alleging that Vega admitted to touching the victim's skin underneath her underwear near her vagina at least two or three times while "tickling" her.[2] The probable cause statement also alleged that the victim reported that Vega's hand had gone "inside of her privates."

¶4 In April 2011, Vega pled no contest to the misdemeanor counts, and he was subsequently placed on three years' probation. Vega's conditions of probation included serving ninety days in jail with work release and attending individual counseling and sex offender treatment. Vega also pled "guilty/no contest" to a felony count of third-degree sexual assault as part of a "Deferred

---

[2] Pursuant to the policies underlying WIS. STAT. RULE 809.86, we do not use identifying information when referring to the victims discussed in this opinion.

3

Prosecution Agreement."[3] That agreement provided that the felony count would be dismissed after seven years if Vega complied with the terms of the agreement. If Vega violated the agreement, however, the circuit court would immediately accept Vega's plea and enter a judgment of conviction. The agreement required Vega to follow all rules and conditions of the agreement and to complete the conditions of probation on the misdemeanor convictions. Some of the agreement's conditions included conditions that had already been imposed as conditions of Vega's probation, such as serving ninety days' jail time with work release and attending individual counseling and sex offender treatment.[4]

¶5 Vega was later charged in Pierce County with a felony count of sexual assault of a child under age thirteen and a misdemeanor count of fourth-degree sexual assault. The complaint alleged that the assaults occurred in 2002 and that Vega had admitted, among other things, to having the victim perform oral sex on him up to ten times and to having touched the victim's vagina. In December 2012, Vega pled guilty to the misdemeanor count, and he was placed on two years'

---

[3] Vega argues that this "deferred prosecution agreement" and the "deferred prosecution agreement" in Pierce County were actually deferred judgments of conviction—also known as deferred entries of judgment—because he pled guilty to the offenses and would have been convicted of those offenses if he violated the agreements. *See, e.g.*, *State v. Wollenberg*, 2004 WI App 20, ¶¶6-10, 268 Wis. 2d 810, 674 N.W.2d 916 (2003). We agree that Vega's agreements in Buffalo and Pierce Counties appear to be agreements for deferred entries of judgment. As further explained later in this opinion, that distinction does not affect our analysis of whether the agreements are part of Vega's arrest record or conviction record. To avoid confusion, and because the distinction does not affect our analysis, we will continue to refer to the agreements as deferred prosecution agreements because they were titled as such.

[4] The agreement also included conditions requiring: (1) payment of restitution; (2) no contact with the victims except as approved by the Buffalo County Department of Health and Human Services and Vega's probation agent; (3) no contact with persons under the age of eighteen without prior written approval of Vega's probation agent or the district attorney; (4) payment of court costs; (5) a written apology to the victims; (6) participation in employment, education, or volunteer work; (7) a DNA sample; (8) no "OWI/OAR violations"; (9) no further criminal violation; and (10) signing "releases in favor of District Attorney as stated on the record on 4-29-11." Vega advances no argument on appeal with respect to these conditions.

probation—concurrent to the Buffalo County convictions—and was required to comply with lifetime sex offender registration. As part of this probation, Vega was also required to comply with the rules of probation set forth by Vega's misdemeanor judgments of conviction in Buffalo County.

¶6 Vega also pled guilty to the felony count pursuant to another "Deferred Prosecution Agreement." Similar to the earlier agreement in the Buffalo County case, the felony count would be dismissed after six years if Vega complied with the agreement, but Vega would be immediately convicted of the felony count if he violated the agreement. Vega agreed, among other things, that the agreement's conditions would include the conditions of his probation on the misdemeanor count and that he would comply with those conditions.

¶7 Throughout all of these criminal proceedings, Vega continued working for Preferred Sands of Minnesota. Before Vega began serving the conditional jail time associated with his Buffalo County convictions, Vega told his supervisor about the sexual assault convictions and requested adjustments to his work schedule to accommodate his work release while in jail and his sex offender treatment. Vega's supervisor agreed to provide him with the necessary accommodations. As Vega's supervisors changed over the next several years, Vega continued to inform those supervisors of his convictions and that he was a registered sex offender. Those supervisors also accommodated Vega's need to attend sex offender treatment during the workweek.

¶8 In July 2015, Vega's employment was transferred to Preferred Sands of Wisconsin—the respondent in this appeal and a sister company of Preferred Sands of Minnesota—due to a shut-down of sand mining operations in Minnesota. Both companies were held by Preferred Proppants, LLC.

¶9	On July 22, 2015, Jesse Johnson, a human resource manager for Preferred Sands, contacted Amanda Bauer, a Preferred Sands' office manager, about having several employees, including Vega, complete a background check to provide necessary motor vehicle records to Preferred Sands' insurance carrier. Around the same time, another Preferred Sands' employee informed Bauer that Vega was a registered sex offender, and Bauer provided that information to Johnson. When Vega was asked to sign paperwork consenting to the background check, he became concerned about who would have access to the information obtained. Vega contacted Johnson and asked who would have access to information about his background and told Johnson that he was a registered sex offender. Johnson replied that he (Johnson) would be the only one to see the information, but he also said that he would notify Lauren Boegner, the vice president of human resources for Preferred Proppants, about their conversation.

¶10	Johnson later spoke with Boegner about Vega's status as a registered sex offender, and Boegner instructed Johnson to obtain a criminal background check on Vega. Johnson followed Boegner's directions and obtained a report on Vega's criminal history, which showed that Vega had misdemeanor convictions for fourth-degree sexual assault and that he had two deferred prosecution agreements with a pending felony sexual assault charge under each agreement. After receiving the report, Preferred Sands obtained certified copies of the criminal complaints against Vega in Buffalo and Pierce Counties, his judgments of conviction on the misdemeanor counts, and the deferred prosecution agreements related to the felony counts.

¶11	Boegner consulted with legal counsel and then instructed Johnson to interview Vega. Boegner gave Johnson a list of prepared questions to ask Vega, including a script for the beginning of the meeting, which read:

> This meeting is part of our internal review to gather the facts and give you an opportunity to talk with us.
>
> We want to hear what happened in your own words as all we have is written documents.
>
> For the purpose of this meeting, we are going to avoid any focus on your prior 4th degree sexual assault convictions. Instead, we want to talk with you and get a complete understanding of your two open deferred prosecution matters ….

¶12 On August 18, 2015, Johnson met with Vega to discuss Preferred Sands' investigation into Vega's criminal history. A human resources manager for Preferred Proppants also participated in the meeting by telephone and took notes of the meeting, which the human resources manager later provided to Boegner. Johnson brought several documents to the meeting, including the criminal complaints and the deferred prosecution agreements from Buffalo and Pierce Counties.

¶13 Consistent with the provided script, Johnson told Vega that Preferred Sands was not worried about the misdemeanor convictions, but it was concerned about the unresolved allegations of the felony sexual assaults. Johnson asked Vega about the felony sexual assaults, and Vega admitted that he had sexually assaulted the victims. Vega then "broke down and got quiet," and he asked Johnson, "What more do you want?" Johnson asked Vega if he could provide more details, and Vega stated that he had touched the victims "inappropriately." Johnson told Vega that he had the detective's statements from the Pierce County case, and he asked Vega whether the facts in the detective's statements were true, whether Vega's statements in those documents were true, and whether Vega admitted to the allegations in those documents. Vega replied affirmatively to each question, stating that the facts were true, that he indeed made those statements, and that he admitted to the conduct.

¶14     Following the interview, Boegner decided to terminate Vega's employment.   Boegner later testified that she made the decision because she "wanted to protect [her] employees and didn't want to put them in a circumstance where they would be uncomfortable."  With Boegner's assistance, Johnson drafted a termination letter that included language regarding Vega's felony charges.  The letter stated in part:

> As we discussed during our conversation, the meeting was part of an internal review to gather facts and gain an understanding of your two open pending deferred prosecution cases relating to 1st Degree Sexual Assault and 3rd Degree Sexual Assault.  For the purpose of the meeting, you were told we would avoid any focus on your prior 4th Degree Sexual Assault convictions.  During our meeting, in reference to both open pending deferred prosecution agreement matters, you admitted to committing sexual assault ….

Johnson subsequently gave Vega the termination letter in late August 2015.  In addition, Johnson completed a form explaining the reason for Vega's discharge: "[Vega] has two open pending deferred prosecution criminal cases which he admitted to and said the facts in both cases were true.  Based on his admissions relating to both of the open cases[,] a decision was made to terminate his employment."

¶15     Vega subsequently filed a complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development, alleging that Preferred Sands' decision to terminate his employment violated the WFEA.   An administrative law judge (ALJ) held a hearing on Vega's claims and heard testimony from several witnesses, including Vega, Boegner and Johnson.  After the hearing, the ALJ concluded that Preferred Sands had violated the WFEA by terminating Vega's employment because of his conviction and arrest record.  The

ALJ ordered Preferred Sands to reinstate Vega with back pay and awarded attorney's fees and costs to Vega. Preferred Sands thereafter petitioned LIRC for review of the ALJ's decision.

¶16 Upon review, LIRC concluded that Preferred Sands' decision to terminate Vega's employment was premised on both permissible and impermissible bases. In particular, LIRC found that Preferred Sands' decision to terminate Vega's employment was impermissibly based on his status as a registered sex offender, which LIRC deemed a conviction record under WIS. STAT. § 111.32(3). LIRC also found, however, that Preferred Sands' decision to terminate Vega's employment was permissibly based on Vega's admissions in his interview regarding his conduct underlying the felony sexual assault charges. Before making that finding, LIRC rejected Vega's argument that his deferred prosecution agreements on the felony charges constituted conviction records under the WFEA. LIRC concluded that Vega's deferred prosecution agreements constituted arrest records under § 111.32(1) and that this court's analysis in *Onalaska* was applicable to the instant facts.

¶17 Because LIRC concluded that Preferred Sands relied on both permissible and impermissible grounds for terminating Vega's employment, LIRC applied the mixed-motive test to determine the appropriate remedy. LIRC found that Preferred Sands would have discharged Vega based solely on its interview with him and his admissions made therein, which would not have violated the WFEA. LIRC concluded that the appropriate remedy was ordering Preferred Sands to cease and desist from discriminating against Vega based on his conviction record, and to pay forty percent of Vega's requested attorney's fees and reasonable costs.

¶18 Vega subsequently sought judicial review of LIRC's decision. The circuit court concluded that the deferred prosecution agreements were conviction records under the WFEA because Vega had pled guilty to the felony charges and because his terms of probation on the misdemeanor convictions had been incorporated into the agreements. The court also concluded that Preferred Sands did not gain any "[n]ew or additional information" from interviewing Vega because he had already admitted to engaging in the conduct by pleading guilty to those charges. The court concluded that Preferred Sands did not terminate Vega's employment based on a permissible basis, and it reversed LIRC's decision. Preferred Sands now appeals.[5]

## DISCUSSION

¶19 Before turning to the heart of our analysis, we must clearly define the issues that we are addressing in this opinion and those we are not, and explain why we are limiting our review. Both topics are informed by the particular facts of this case and, especially, the parties' arguments on appeal, as well as by the current state of relevant appellate and administrative case law.

¶20 Beginning with the state of the law, under the WFEA, employers are generally prohibited from terminating the employment of any individual on the basis of an "arrest record" or a "conviction record." WIS. STAT. §§ 111.321, 111.322(1). Consistent with LIRC's analysis in this case, the parties here focus on this court's 1984 holding in *Onalaska v. LIRC*, 120 Wis. 2d 363, 354 N.W.2d 223 (Ct. App. 1984). There, we held that an employer does not unlawfully discharge an employee

---

[5] Preferred Sands only seeks reversal of the circuit court's decision and does not contest on appeal LIRC's finding that Preferred Sands impermissibly relied on Vega's status as a registered sex offender when terminating his employment or the remedies ordered in relation to that finding.

based on the employee's "arrest record" if the employer concludes from its own independent investigation and questioning of the employee that the employee had, in fact, committed an offense. *Id.* at 367. In the decades since that holding, few Wisconsin appellate cases have further applied this holding in any context. *But see County of Dane v. Norman*, 174 Wis. 2d 683, 693, 497 N.W.2d 714 (1993) (offering *Onalaska* as an example of how Wisconsin employment discrimination law distinguishes between unlawful reliance on one's "status" versus lawful reliance of one's "conduct" perhaps related to a status).

¶21 Significantly, no case has extended or applied *Onalaska*'s rationale regarding an independent investigation to employment discrimination claims based on a conviction record, although courts also have not rejected such an extension. In the absence of such a decision, LIRC has now expressly refused to make that extension, despite recognizing that it had previously cited *Onalaska* favorably "in a number of [LIRC] decisions as [being] applicable to conviction record cases." *Swanson v. Kelly Servs.*, ERD Case No. CR200203683 (LIRC Oct. 13, 2004); *see also Sheridan v. United Parcel Serv.*, ERD Case No. CR200204955 (LIRC July 11, 2005). Although this issue of law is unsettled, *Onalaska* nonetheless remains binding law, at least with respect to employment decisions implicating "arrest records."[6] *See Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) ("[O]nly the supreme court, the highest court in [Wisconsin], has the power to overrule, modify or withdraw language from a published opinion of the court of appeals.").

---

[6] There was a dissent in *Onalaska v. LIRC*, 120 Wis. 2d 363, 354 N.W.2d 223 (Ct. App. 1984).

¶22 Due to the nature of the parties' arguments, we do not have occasion in this appeal to assess the merit of extending *Onalaska*'s independent investigation rationale to the context of conviction records. While Vega asserts that this court's *Onalaska* analysis is not applicable to a claim of employment discrimination based on a person's conviction record, he only contends that a deferred prosecution agreement *is* part of such a record and not part of an arrest record. Other than questioning LIRC's factual findings on the basis for Preferred Sands' termination decision, *see infra* ¶¶37-43, he makes no argument that if we deem his deferred prosecution agreements as part of his arrest record, *Onalaska* does not apply under the facts in this case. Preferred Sands, for its part, does not argue that *Onalaska* applies in the context of conviction records; it argues only that deferred prosecution agreements are properly deemed part of one's arrest record, such that *Onalaska* governs. Again, the parties' approach is consistent with LIRC's decision in this case.

¶23 For these reasons, the unsettled issue of whether the *Onalaska* rule applies in the context of conviction records—and the relative logic or merit of any possible rule regarding the same—is not before this court. We therefore do not address that issue despite the fact that our decision applying the *Onalaska* rule in the context of arrest records and not in the context of conviction records may appear inconsistent. Rather, we can and do resolve this appeal on the narrower grounds— those advanced by the parties—of whether a not-yet-violated deferred prosecution agreement is part of a person's "arrest record" or "conviction record."

*I. Classification of a deferred prosecution agreement under the WFEA*

¶24 As just explained, the primary issue in this appeal is whether an agreement to defer prosecution or to defer entry of judgment in a criminal case is

12

part of a person's "conviction record," as defined by WIS. STAT. § 111.32(3). Vega argues that LIRC erroneously concluded that his deferred prosecution agreements were arrest records under § 111.32(1) instead of conviction records under § 111.32(3).[7] He contends that "conviction record" is defined broadly in the statutes and is not limited to only information indicating that an individual has been convicted of an offense. Vega argues that the terms of his deferred prosecution agreements, which include conditions of probation and jail time, constitute a conviction record under the WFEA.

¶25 When reviewing a decision of an administrative agency, we review the agency's decision, not the decision of the circuit court. *Stoughton Trailers, Inc. v. LIRC*, 2007 WI 105, ¶26, 303 Wis. 2d 514, 735 N.W.2d 477. The interpretation and application of a statute present questions of law that we review de novo, while benefiting from the agency's analysis. *Black v. City of Milwaukee*, 2016 WI 47, ¶21, 369 Wis. 2d 272, 882 N.W.2d 333; *see also Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21.

¶26 Our interpretation of the terms "arrest record" and "conviction record" begins with the language of the statutes. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language "in the context in which it is used; not in isolation but as part of

---

[7] As noted earlier in this opinion, *see supra* ¶4 n.3, Vega's agreements in Buffalo and Pierce Counties appear to be agreements for deferred entries of judgment, not actually deferred prosecution agreements. That distinction does not affect our analysis of whether the agreements are part of Vega's arrest record or conviction record. Like a deferred prosecution agreement, *see* WIS. STAT. § 971.39(1)(f), both of the agreements at issue required that the pending charges be dismissed upon Vega's successful completion of, and compliance with, the agreements' terms. In other words, if Vega successfully completed the terms of his agreements, he would never be convicted of the felony charges discussed therein. Although Vega pled guilty to the offenses as part of those agreements, it is undisputed that the circuit court did not accept the pleas, find him guilty, or enter judgment at the time Vega entered his pleas.

a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." ***Id.***, ¶46.

¶27 WISCONSIN STAT. § 111.32(1) provides that an arrest record "includes, but is not limited to, information indicating that an individual has been questioned, apprehended, taken into custody or detention, held for investigation, arrested, charged with, indicted or tried for any felony, misdemeanor or other offense pursuant to any law enforcement or military authority." A conviction record, on the other hand,

> includes, but is not limited to, information indicating that an individual has been convicted of any felony, misdemeanor or other offense, has been adjudicated delinquent, has been less than honorably discharged, or has been placed on probation, fined, imprisoned, placed on extended supervision or paroled pursuant to any law enforcement or military authority.

Sec. 111.32(3).

¶28 The definitions of arrest record and conviction record each contain broad language expressly recognizing that the definitions are "not limited" to the provided examples and that they extend beyond information indicating that an individual has been arrested or convicted of an offense. *See* WIS. STAT. § 111.32(1), (3). In addition, each definition is not constrained to physically recorded documents but applies generally to "information." *See id.* Despite the use of broad language, each definition still has its limits. For example, all of the information that falls under an arrest record involves an individual having contact with a law enforcement or military authority before any finding of guilt or culpability has occurred. *See* § 111.32(1). On the other hand, all of the provided examples that fall under a conviction record include matters where there has been a conclusive finding

regarding an individual's guilt or culpability, or the circuit court has imposed the consequences that flow from such finding. *See* § 111.32(3).

¶29 At its core, a deferred prosecution agreement is not a part of a person's "conviction record" under WIS. STAT. § 111.32(3) because it occurs before any finding of guilt or culpability has occurred and because the agreement, in and of itself, is not information indicating that an individual has been convicted of an offense, adjudicated delinquent, less than honorably discharged, or "placed on probation, fined, imprisoned, placed on extended supervision or paroled pursuant to any law enforcement or military authority." *See* ***id.*** It is simply an agreement that a defendant will not be prosecuted for—or, in this case, convicted of—a crime if the defendant complies with the terms of the agreement. Such an agreement, alone, does not order a person to be placed on probation or imprisoned, and it directly indicates that the individual has not yet been convicted of the offense at issue. In fact, the agreement specifically provides that unless the person later violates the agreement, the person will not be convicted of the offense.

¶30 Vega contends that the relevant legal inquiry here involves considering what the agreements required and imposed. He contends that his agreements imposed conditions—including probation, jail time, individual counseling, and sex offender treatment—that thereby constitute conviction records under WIS. STAT. § 111.32(3). Vega's arguments are misplaced for two reasons.

¶31 First, citing WIS. STAT. §§ 973.09(1)(a), 973.03, 973.05, 973.048, and 973.14, Preferred Sands argues that a person—without having first been convicted of an offense—cannot statutorily be placed on probation, fined, imprisoned, placed on extended supervision, or paroled pursuant to any law enforcement or military authority. This includes a person, as is the case here, who has only entered into a

deferred prosecution agreement. Vega fails to address these arguments, and he therefore concedes them. *See* ***Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded). Furthermore, Vega cites no authority that would permit a court to order any such conditions attendant to a deferred prosecution agreement in the absence of the defendant serving a conviction for a separate crime that itself has such conditions.

¶32 Second, the deferred prosecution agreements—by their express terms—did not impose any probation, imprisonment, fine, extended supervision, or parole. The Pierce County agreement did not "place" Vega on probation. Rather, it required that he "comply with the terms of probation relative to Count 2," which was the misdemeanor conviction in Pierce County. The Pierce County agreement also never discussed or imposed any period of imprisonment, fine, extended supervision, or parole. The Pierce County agreement plainly imposed no new or independent requirements that would either constitute or evidence a conviction record for that felony offense under WIS. STAT. § 111.32(3).

¶33 Similarly, the Buffalo County agreement imposed no terms that would constitute a conviction record under WIS. STAT. § 111.32(3). The agreement did not place Vega on probation; rather, it required that he "complete [the] conditions of probation of the companion charges of fourth degree sexual assault." The Buffalo County agreement did list several conditions, requiring "90 days jail, with [work] release privileges," and completion of "individual counseling" and a "sex offender treatment program." But those terms were already imposed pursuant to Vega's misdemeanor convictions in Buffalo County and were therefore not new requirements or consequences of the deferred prosecution agreement itself.

16

¶34 Although the deferred prosecution agreements do contain information indicating that Vega had been placed on probation and was required to spend time in jail pursuant to his misdemeanor convictions, that information does not render the entirety of the agreements or both of the pending felony charges—of which Vega had not been convicted—a part of Vega's conviction record. Again, the definitions of "conviction record" and "arrest record" apply to "information," and they are not constrained to physical documents. *See* WIS. STAT. § 111.32(1), (3). As is the case here, a document can contain information that bears on both a person's arrest record and the person's conviction record, especially when multiple charges are at issue. Ultimately, the information contained in the deferred prosecution agreements bearing on Vega's conviction record (i.e., his probation and jail time for the misdemeanor convictions) is of no consequence because LIRC never found that Preferred Sands terminated Vega's employment based on that information.[8]

¶35 Vega also contends that interpreting the term "conviction record" not to include a deferred prosecution agreement is contrary to the remedial purpose of the WFEA. He argues that such an interpretation would discourage employees from entering into plea agreements and punish them for doing so. Vega is correct that we must liberally construe the WFEA to accomplish its purpose, which includes encouraging and fostering to the fullest extent practicable the employment of all properly qualified individuals regardless of arrest record or conviction record. *See* WIS. STAT. § 111.31(3). However, our interpretation of what constitutes a conviction record does not violate that principle. Although a deferred prosecution agreement is not part of a person's conviction record, as defined by WIS. STAT.

---

[8] Contrary to Vega's argument, Preferred Sands' citation to applicable provisions in the Wisconsin Statutes, *see supra* ¶31, is citation to "legal authority" supporting the notion that the conditions at issue are only permitted due to the existence of the misdemeanor convictions, and not independently permitted by the deferred prosecution agreements. Again, Vega never addressed these statutes or Preferred Sands' arguments invoking them.

17

§ 111.32(3), it is undoubtedly a part of a person's arrest record, as defined by § 111.32(1)—which is expressly protected under the WFEA. Our interpretation might have the practical effect of allowing employers to independently investigate the underlying conduct of an individual's deferred prosecution agreement pursuant to *Onalaska*, but such a result does not necessitate that we interpret "conviction record" to include something that it plainly does not.

¶36 Finally, our conclusion that Vega's deferred prosecution agreements are not part of his conviction record is further supported by LIRC's longstanding treatment of agreements to defer prosecution or to defer entry of judgment as being part of a person's "arrest record." *See, e.g.*, *Lovejoy v. Auto-Wares Wis., Inc.*, ERD Case No. CR200703609 (LIRC Feb. 24, 2011); *Delapast v. Northwoods Beach Home Caring Homes, Inc.*, ERD Case No. 8901907 (LIRC Feb. 17, 1993); *Mielke v. Orkin Exterminator Co.*, ERD Case No. 8500540 (LIRC Apr. 11, 1988). We agree with this longstanding treatment. Deferred prosecution agreements are part of a person's "arrest record" and are not part of the person's "conviction record."

## II. *Preferred Sands' independent investigation*

¶37 Vega next argues that there is not substantial evidence in the record to support LIRC's finding that Preferred Sands terminated his employment, in part, because of information Preferred Sands obtained from him regarding his pending criminal charges, including his admission that he had sexually assaulted the victims. Vega contends that Preferred Sands only relied on his status as a registered sex offender and that its investigation flowed from his initial disclosure that he was a registered sex offender. He also argues, consistent with the circuit court's decision, that no "new or additional information" was obtained from the interview process because Vega had already pled guilty to the offenses and there was nothing left to

investigate. He therefore contends that this court's analysis under *Onalaska* does not apply.

¶38 We afford significant deference to the agency's findings of fact and will uphold those findings if supported by "substantial evidence." *Milwaukee Symphony Orchestra, Inc. v. DOR*, 2010 WI 33, ¶31, 324 Wis. 2d 68, 781 N.W.2d 674. Substantial evidence exists if, after considering all the evidence of record and after drawing all available inferences from that evidence, "reasonable minds could arrive at the conclusion reached by the trier of fact." *Id.* As stated earlier, an employer does not improperly discharge an employee based on an arrest record if the employer concludes from its own independent investigation and questioning of the employee that the employee has, in fact, committed an offense:

> To discharge an employe because of information indicating that the employe has been questioned by a law enforcement or military authority is to rely on an assertion by another person or entity. If … the employer discharges an employe because the employer concludes from its own investigation and questioning of the employe that he or she has committed an offense, the employer does not rely on information indicating that the employe has been questioned, and therefore does not rely on an arrest record, as defined in [WIS. STAT. §] 111.32(5)(h) ….[9]

*Onalaska*, 120 Wis. 2d at 367.

¶39 Consistent with LIRC's findings, we agree that Preferred Sands' decision to terminate Vega was motivated, in part, by his status as a registered sex offender. Despite that fact, substantial evidence also supports LIRC's additional finding that Preferred Sands was partially motivated by information obtained from

---

[9] Although *Onalaska* interpreted the WFEA's definition of "arrest record" under WIS. STAT. § 111.32(5)(h) (1979-80), this court noted that the definition of "arrest record" had recently been moved to § 111.32(1) (1981-82) and was "unchanged." *See Onalaska*, 120 Wis. 2d at 364 n.1, 366 & n.2.

19

its interview with Vega. Such a finding is supported by the fact that Preferred Sands did not terminate Vega's employment immediately upon Vega disclosing that he was a registered sex offender. Rather, Preferred Sands interviewed Vega to obtain more information about the pending felony charges and then terminated him after he admitted to having engaged in the alleged conduct. Not only did Vega admit in his interview that he had "sexually assaulted" the victims, but he also admitted to all of the facts and details provided in the detective's statements from Pierce County.

¶40 Contrary to Vega's arguments, Preferred Sands did obtain new and independent information—indeed, very important information—from Vega's interview. The interview allowed Preferred Sands to learn—directly from Vega— whether he had committed the offenses and whether he disputed any alleged facts, including facts specifically related to the pending felony charges. Although Vega provided scant detail during the interview and confirmed everything that the documents had alleged, his admissions still provided new and independent information that he had, in fact, committed felony-level sexual assaults and that all of the details in the detective's statements were true. These are important and new revelations. Moreover, as Preferred Sands correctly observes, *Onalaska* did not require that an employer obtain completely new or additional information from its investigation. *Onalaska* simply required that the employer conclude from its own investigation and questioning of the employee that the employee committed the offense. *Onalaska*, 120 Wis. 2d at 367. That is precisely what Preferred Sands did here.

¶41 LIRC also aptly recognized that Vega's admissions to Johnson "could reasonably be taken by [Preferred Sands] as a more credible indication of Vega's guilt than the fact that he entered into a plea agreement." A defendant might have many different reasons for entering into a deferred prosecution agreement, even if

it requires acknowledging guilt, under circumstances where the defendant does not agree with the veracity of some or all of the alleged facts. Those reasons might include concerns about the likelihood of success at trial or concerns about the stress and financial cost of a trial. A deferred prosecution agreement might also provide a defendant with the best opportunity for securing a dismissal of the charge, and it might reflect, as LIRC recognized, the State's uncertainty about proving the charges beyond a reasonable doubt. Vega's own admissions to Preferred Sands that he committed felony-level sexual assaults and agreed with the details in the detective's statements could therefore be viewed as more credible than his admissions of guilt in exchange for deferred prosecution agreements.

¶42 In addition, LIRC credited Preferred Sands' efforts to consider only information obtained from Vega regarding the pending felony charges and not to rely on Vega's misdemeanor convictions. Indeed, Preferred Sands repeatedly told Vega that it was only concerned about his pending felony charges and that it wanted to know more about those charges. Preferred Sands was also counseled against discharging Vega based on his misdemeanor convictions, and LIRC recognized that Preferred Sands "was sincerely motivated to discharge him based on [his] admissions." While Vega quarrels with LIRC's findings regarding Preferred Sands' actual motivations, ultimately, "[t]he weight and credibility of the evidence are for the agency, not the reviewing court, to determine." *Milwaukee Symphony Orchestra*, 324 Wis. 2d 68, ¶31 (citation omitted). By crediting Preferred Sands' efforts to avoid discharging Vega based on his misdemeanor convictions, a reasonable fact finder could infer that Preferred Sands did in fact rely on Vega's

admissions during the interview to having committed felony-level sexual assaults as opposed to information contained in Vega's arrest records.[10]

¶43 Vega also argues that the decisions of the ALJ and circuit court are "an indication of what a reasonable trier of fact, after reviewing all of the evidence, concluded. Both found that the termination decision was because of [an] arrest record and not because of any independent investigation." Be that as it may, the question is not whether the ALJ or the circuit court had a reasonable view of the evidence. The question is whether a reasonable fact finder, after considering all of the evidence, could find—as LIRC did here—that Vega's discharge was based in part on information he disclosed in his interview and not based on his arrest record. After considering all the evidence, a reasonable fact finder could find that Preferred Sands relied on Vega's admissions during his interview and that, pursuant to *Onalaska*, it did not rely on his arrest record. We must therefore uphold those findings.

### III. Mixed-motive analysis

¶44 Vega next argues that LIRC erroneously found, in the context of its application of the mixed-motive test, that Preferred Sands would have terminated his employment even if it had not improperly relied on his status as a registered sex

---

[10] Vega acknowledges that there is a legal distinction between the elements of his misdemeanor convictions and his felony charges, but he argues that the record contains no evidence that Preferred Sands "based its decision on allegations of sexual contact vs. sexual intercourse." *See* WIS. STAT. § 940.225(5)(b)-(c). In reality, Preferred Sands might not have based its decision specifically on the legal difference between sexual contact and sexual intercourse, but Boegner nevertheless testified that she knew that "a misdemeanor, in general, is less than a felony." Moreover, because Vega admitted to all of the details contained in the detective's statements, Preferred Sands knew that Vega had committed the most egregious acts alleged in those statements, including the acts that would constitute a felony. Under these circumstances, Preferred Sands was not required to know precisely what distinguished Vega's misdemeanor sexual assault convictions from his pending felony sexual assault charges.

offender—i.e., relied on his conviction record. He contends that Preferred Sands had to prove, by clear and convincing evidence, that it would have terminated his employment based solely on a lawful, nondiscriminatory purpose and that the record contains no evidence on that issue. Vega therefore argues that LIRC improperly applied the mixed-motive test to conclude that he was not entitled to back pay or reinstatement.

¶45 "A mixed motive case is one in which the adverse employment decision resulted from a mixture of legitimate business reasons and prohibited discriminatory motives." *Hoell v. LIRC*, 186 Wis. 2d 603, 608, 522 N.W.2d 234 (Ct. App. 1994). Under circumstances involving mixed motivations, the remedies available to an employee are guided by the mixed-motive test, which provides:

> If an employe is terminated solely because of an impermissible motivating factor, the employe normally should be awarded a cease and desist order, reinstatement, back pay, interest, and attorney's fees under the Wisconsin Fair Employment Act. If an employe is terminated in part because of an impermissible motivating factor and in part because of other motivating factors, but the termination would not have occurred in the absence of the impermissible motivating factor, [LIRC] has the discretion to award some or all of the remedies ordinarily awarded. Finally, if an employe is terminated in part because of an impermissible factor and in part because of other motivating factors, and the termination would have taken place in the absence of the impermissible motivating factor, the employe should be awarded only a cease and desist order and attorney's fees.

*Id.* at 610-11 (emphasis omitted).

¶46 As an initial matter, we reject Vega's argument that an employer must present clear and convincing evidence that it would have terminated the employee based solely on a legitimate business reason despite some reliance on an impermissible factor. An employer's motivation for discharging an employee is a

"question of ultimate fact" and, in the context of a governmental agency case, such as this one, must be affirmed if it is supported by *substantial evidence*—i.e., evidence permitting reasonable minds to arrive at the conclusion so reached. *Id.* at 614. Vega does not cite any authority supporting his argument other than a nonbinding LIRC decision from 1999. We therefore employ the same, commonly used standard as applied in *Hoell*—substantial evidence. *See id.*

¶47 Substantial evidence supported LIRC's finding that Preferred Sands would have discharged Vega based solely on Vega's admissions during his interview. Boegner testified that she decided to terminate Vega's employment, in part, because she "wanted to protect [her] employees." Boegner further testified in a deposition, which was read into the record during the hearing, that "[a]n individual who committed a sexual crime is not acceptable in our society and is concerning and makes people feel unsafe." A reasonable fact finder could infer from Boegner's testimony that she was resolved to protect her employees and would have been just as motivated to terminate Vega's employment based solely on his admissions to the facts underlying the felony sexual assault charges as she was to discharge him based on both his admissions and his status as a registered sex offender. As LIRC recognized, Vega admitted to various offenses in his interview, including offenses involving sexual intercourse, that "eclipse the misdeeds for which he was convicted, and provide ample reason on their own for the employer's termination decision."

¶48 Because LIRC's finding regarding Preferred Sands' mixed motivation was supported by substantial evidence, LIRC's application of the mixed-motive test was proper. In applying the mixed-motive test, LIRC correctly concluded that Vega's remedies should be limited to attorney's fees and a cease and desist order, and that reinstatement and back pay were not appropriate. *See id.*

*By the Court.*—Order reversed.