**2024 WI App 8**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2022AP1158

†Petition for Review Filed

Complete Title of Case:


**OCONOMOWOC AREA SCHOOL DISTRICT,**

    **PETITIONER-APPELLANT,**

  **V.**

**GREGORY L. COTA, JEFFREY M. COTA AND
LABOR AND INDUSTRY REVIEW COMMISSION,**

    **RESPONDENTS-RESPONDENTS.†**


| | |
|---|---|
| Opinion Filed: | January 10, 2024 |
| Submitted on Briefs: | May 1, 2023 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Grogan, JJ. |
| Concurred: | Grogan, J. |
| Dissented: | Neubauer, J. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Oyvind Wistrom* of *Lindner & Marsack, S.C.*, Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the respondents-respondents, Gregory L. Cota and Jeffrey M. Cota, the cause was submitted on the brief of *Alan C. Olson* and *Nicholas O. Yurk* of *Alan C. Olson & Associates, S.C.*, Milwaukee. |
| | On behalf of the respondent-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *Katy Lounsbury*, Madison. |

COURT OF APPEALS
DECISION
DATED AND FILED

January 10, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1158**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CV1232

**IN COURT OF APPEALS**

---

OCONOMOWOC AREA SCHOOL DISTRICT,

   PETITIONER-APPELLANT,

 V.

GREGORY L. COTA, JEFFREY M. COTA AND LABOR AND INDUSTRY REVIEW COMMISSION,

   RESPONDENTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Waukesha County: LLOYD V. CARTER, Judge. *Reversed and cause remanded with directions*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

¶1    GUNDRUM, P.J.   The Oconomowoc Area School District (District) appeals from an order of the circuit court affirming the decision of the Labor and Industry Review Commission (LIRC).   The District contends LIRC erred in

determining its termination of the employment of brothers Gregory and Jeffrey Cota violated "the arrest record discrimination prohibition contained in the Wisconsin Fair Employment Act (WFEA)." For the following reasons, we conclude LIRC and the circuit court erred, and we reverse and remand.

## Background

¶2 The District terminated the Cotas' employment based upon its belief they stole from it by personally retaining funds they received from selling District scrap metal. The brothers challenged their terminations, contending they constituted unlawful employment discrimination based upon each brother's "arrest record," as that term is statutorily defined, because the District fired them based upon each being issued a municipal citation for theft, the municipal prosecutor indicating to the District that he could prevail on the citations if the matter proceeded to trial, and the Cotas agreeing to resolve the matter by paying $500 to the District. LIRC agreed with the brothers, finding that the District had terminated their employment on these bases and concluding that such terminations violated the WFEA. The circuit court upheld LIRC's decision, and the District now appeals to us.

## Discussion

¶3 For purposes of this appeal, we accept LIRC's finding that the District terminated the Cotas based upon the information it received related to the civil, municipal theft charges initiated against the Cotas. Nonetheless, we reverse because we conclude the WFEA provides no protection against terminations based upon information related to a civil, municipal charge.

2

¶4     In this employment discrimination case, we review the decision of LIRC and not that of the circuit court, *see **Rice Lake Harley Davidson v. LIRC***, 2014 WI App 104, ¶21, 357 Wis. 2d 621, 855 N.W.2d 882, reviewing de novo LIRC's interpretation and application of statutes, ***Tetra Tech EC, Inc. v. DOR***, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21. If we determine, as we do, that LIRC has "erroneously interpreted a provision of law and a correct interpretation compels a particular action," we are to "set aside or modify [LIRC's] action." WIS. STAT. § 227.57(5) (2021-22).[1]

¶5     When reviewing statutory language, as we do here, we "ascertain and apply the plain meaning of the statutes as adopted by the legislature." *See **White v. City of Watertown***, 2019 WI 9, ¶10, 385 Wis. 2d 320, 922 N.W.2d 61.

> We interpret the relevant words of the statute in accordance with their "common and approved usage"; however, "technical words and phrases and others that have a peculiar meaning in the law" are "construed according to such meaning." *See* WIS. STAT. § 990.01(1). To determine common and approved usage, we consult dictionaries. *See **State v. McKellips***, 2016 WI 51, ¶32, 369 Wis. 2d 437, 881 N.W.2d 258 (citing ***State v. Sample***, 215 Wis. 2d 487, 499–500, 573 N.W.2d 187 (1998)). To determine the meaning of legal terms of art, we consult legal dictionaries. ***State v. Schaefer***, 2008 WI 25, ¶¶29–31, 308 Wis. 2d 279, 746 N.W.2d 457 (consulting Black's Law Dictionary to determine the meaning of "discovery").
>
> We read the relevant words of the statute "in the context in which ... [they] are used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes." ***James v. Heinrich***, 2021 WI 58, ¶20, 397 Wis. 2d 517, 960 N.W.2d 350 (quoting [***State ex rel. Kalal v. Circuit Court for Dane Cnty.***, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110]). We also consider traditional canons of construction, which serve as "helpful, neutral guides" for our analysis. ***Id.***, ¶23 n.12 (quoting Antonin

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 61 (2012)).

**Sanders v. State of Wisconsin Claims Board**, 2023 WI 60, ¶¶14-15, 408 Wis. 2d 370, 992 N.W.2d 126 (second alteration added). Consideration of "the structure of the statute in which the operative language appears" is also important in interpreting the meaning of a statute. **Kalal**, 271 Wis. 2d 633, ¶46.

¶6 WISCONSIN STAT. § 111.322 of the WFEA provides: "Subject to [WIS. STAT. §§] 111.33 to 111.365, it is an act of employment discrimination … (1) To refuse to hire, employ, admit or license any individual, [or] to bar or terminate from employment … any individual … because of any basis enumerated in [WIS. STAT. §] 111.321." Section 111.321 provides: "Subject to [§§] 111.33 to 111.365, no employer … may engage in any act of employment discrimination … against any individual on the basis of … arrest record …." WISCONSIN STAT. § 111.32(1) provides:

> "Arrest record" includes, but is not limited to, information indicating that an individual has been questioned, apprehended, taken into custody or detention, held for investigation, arrested, charged with, indicted or tried for *any felony, misdemeanor or other offense pursuant to any law enforcement or military authority*.

(Emphasis added.)

¶7 The key question for this appeal is whether the legislature intended the above statutory provisions to provide employment-discrimination protection in connection with not only arrest-record information related to *criminal* offenses but also such information related to *civil* offenses—like the civil, municipal theft charges issued against the Cotas. To answer this question, we must determine what the legislature intended when it included the phrase "or other offense" in WIS. STAT.

§ 111.32(1).[2] We conclude the legislature intended this phrase—and these statutory provisions—to protect only with regard to criminal-offense information, and thus, the District's termination of the Cotas based on the noted civil, municipal offense information did not constitute unlawful employment discrimination.

¶8    To begin, we note that an "arrest" is generally associated with taking a person into custody in connection with a criminal charge, not a civil one. As Garner's Dictionary of Legal Usage recognizes, "arrest; apprehend; detain"—all terms or variations of terms used in WIS. STAT. § 111.32(1)—"share the sense 'to limit someone's freedom by holding in custody, esp. as an early step in a possible criminal prosecution.' *Arrest* is the general term for seizing and holding a person in custody by legal authority, especially for purposes of pursuing a criminal charge." *Arrest*, GARNER'S DICTIONARY OF LEGAL USAGE (3rd ed. 2011) (emphasis omitted); *see also Arrest*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabr. 1993) ("the taking or detaining of a person in custody by authority of law"). Along those lines, § 111.32(1) provides that "'[a]rrest record' includes, but is not limited to, information indicating that an individual has been questioned, apprehended, taken into custody or detention, held for investigation, arrested, charged with, indicted or tried"—language that strongly suggests the legislature contemplated *criminal* offenses when it thereafter added "for any felony, misdemeanor *or other offense* pursuant to any law enforcement or military authority," as all of these "[a]rrest record" actions are either exclusively or more

---

[2] The dissent relies heavily upon the fact the word "offense" can and often does refer to criminal offenses *and* civil offenses. The majority does not dispute this. What we conclude, for the reasons explained herein, is that in the particular usage of "or other offense" in WIS. STAT. § 111.32(1), the legislature intended it to refer to only criminal offenses.

5

commonly associated with criminal offenses, not civil, municipal ones. (Emphasis added.)

¶9     Considering "or other offense" "in relation to the language of surrounding or closely-related statutes," *Kalal*, 271 Wis. 2d 633, ¶46, we observe WIS. STAT. § 111.335(2)(b) to be insightful.

¶10     WISCONSIN STAT. §§ 111.321 and 111.322 both begin with "[s]ubject to [§§] 111.33 to 111.365." And, WIS. STAT. § 111.335(2)(b), which §§ 111.321 and 111.322 are "[s]ubject to," correspondingly begins with "[n]otwithstanding [§] 111.322." Thus, these statutes are unquestionably "closely-related." Section 111.335(2)(b) then continues:

> [I]t is not employment discrimination because of arrest record to refuse to employ or license, or to suspend from employment or licensing, any individual who is subject to a pending *criminal* charge if the circumstances of the charge substantially relate to the circumstances of the particular job or licensed activity, except as provided in sub. (4)(a).

(Emphasis added.) Subsection (4)(a) provides:

> It is employment discrimination because of arrest record for a licensing agency to refuse to license any individual under sub. (2)(b) or to suspend an individual from licensing under sub. (2)(b) solely because the individual is subject to a pending *criminal* charge, unless the circumstances of the charge substantially relate to the circumstances of the particular licensed activity and the charge is for any of the following:
>
>   1. An exempt offense.[3]
>
>   2. A violent crime against a child.

---

[3] WISCONSIN STAT. § 111.335(1m)(b) defines "[e]xempt offense[s]" as all "Crimes Against Life and Bodily Security" included in WIS. STAT. ch. 940, various specified "Crimes Against Children" from WIS. STAT. ch. 948, and "violation[s] of the law of another jurisdiction that would be [one of these violations] if committed in this state."

Sec. 111.335(4)(a) (emphasis added). The legislature's inclusion of the word "criminal" in §§ 111.335(2)(b) and 111.335(4)(a) without also including the word "civil" or perhaps even "municipal" indicates its use of the phrase "or other offense" in WIS. STAT. § 111.32(1) was only intended to refer to other criminal offenses, not civil, municipal offenses.[4]

¶11 We further observe that even though the specific issue we now consider was not before us in ***Miller Brewing Co. v. DILHR***, 103 Wis. 2d 496, 308 N.W.2d 922 (Ct. App. 1981)—that case instead involved the falsification of an applicant's criminal record on his employment application—we expressed our understanding that these then-recently enacted WFEA provisions protect employees or prospective employees with regard to their *criminal* record. ***Id.*** at 500.

> Subsequent to the employee's discharge, but prior to the commission's decision in this matter, the legislature amended the Wisconsin Fair Employment Act (WFEA), [WIS. STAT. §§] 111.31 through 111.37 … to include *an arrest and conviction record* as a prohibited factor of

---

[4] The dissent asserts that the majority is "effectively add[ing] the word 'criminal' before" the word "offense" in WIS. STAT. § 111.32(1). Dissent, ¶40. This is hardly so. There is no need to "add" the word "criminal" in that spot as it is already assumed based upon the *ejusdem generis* canon of construction because the "list of specific[]" words preceding "offense" is a list that includes only offenses from the criminal class. *See infra* ¶15.

Relatedly, the dissent asserts that use of the phrase "subject to a pending criminal charge" in WIS. STAT. § 111.335(2)(b) shows that "when the legislature wishes to specify a narrower class of (criminal) offenses, it uses the word 'criminal' to do so." Dissent, ¶36. Again, there would be no need for the legislature to add "criminal" before "offense" in "or other offense" in WIS. STAT. § 111.32(1) because *ejusdem generis* leads to the sensible conclusion that the legislature was referring only to criminal offenses in using the phrase "or other offense" in § 111.32(1). Indeed, adding the word "criminal" before "offense" in that spot would have been redundant. The same cannot be said for § 111.335(2)(b). Adding "criminal" before "charge" here makes legislative sense because it incorporates together all of "any felony, misdemeanor or other offense" charges by using the shorthand of "criminal." Moreover, the dissent's presumption at paragraph thirty-six that § 111.335(2)(b) "carves out of the general prohibition a limited situation in which an individual has a certain type of offense, a pending criminal charge" is based on speculation and the unfounded assumption that § 111.32(1) includes civil offenses—the dissent's assumption is speculative and unfounded because there is no indication in §§ 111.335(2) or 111.32(1) that anything other than criminal offenses were contemplated by the legislature in enacting these statutes.

>discrimination in employment. Although the commission's decision does not refer to WFEA, it argues that these amendments are entitled to weight in determining the issue on appeal. The legislature's prohibition of employment discrimination on the basis of an applicant's *criminal* record unless the circumstances of the *crime(s)* "substantially relate to the circumstances of the particular job," it urges, supports its conclusion that only those falsifications which are material to the job constitute "misconduct" within the meaning of [WIS. STAT. § 108.04(5)].

*Id.* (emphases added; footnote omitted). We also indicated that the circuit court "determined … that employers have an interest in having questions concerning *criminal* records … answered truthfully." *Id.* at 501 (emphasis added). And, not referring to the decisions of LIRC or the circuit court but purely making our own statement about the WFEA, we wrote:

>The *purpose* of the WFEA amendments was to secure to the *ex-offender* his or her rights to compete in the employment marketplace free from arbitrary and stigmatic determination made on the basis of a *criminal* record which bears no "substantial relationship" to the employment.… By imposing sanctions against an employer who makes employment decisions on the basis of *crimes* immaterial to the employment, WFEA presupposes that the employee's *criminal* record is known to the employer, and that the employer will make some judgment concerning it. WFEA prohibits arbitrary discrimination. It does not prohibit an employer from asking questions about *criminal* records ….

*Id.* at 504 (emphases added). The "felony, misdemeanor, or other offense" language of the WFEA gave us no pause in concluding (or assuming) that the protections

apply only with regard to criminal offenses.[5]  It has not escaped us that even though the District referred to and quoted from the *Miller Brewing* decision in its supplemental brief-in-chief on appeal, neither the Cotas nor LIRC addressed the case in their supplemental response briefs.

¶12    The Cotas (and similarly LIRC) correctly point out that Wisconsin has only two designations for criminal offenses, felony and misdemeanor.  *See* WIS. STAT. § 939.60.  From this, however, they argue "or other offense" *must* mean civil offense, like the civil, municipal offense the Cotas were charged with here, because otherwise "or other offense" would be "meaningless surplusage."  We disagree. WISCONSIN STAT. § 111.32(1) clearly looks beyond Wisconsin offenses as it provides employment protection related to questioning, arrests, charges, etc., for

---

[5]  The Cotas direct us to *City of Onalaska v. LIRC*, 120 Wis. 2d 363, 354 N.W.2d 223 (Ct. App. 1984).  We recognize that in *City of Onalaska* we appear to implicitly suggest—by taking up the unique issue in that case in the first instance—that discharging an employee based upon law enforcement questioning related to a civil offense, specifically "racing" under WIS. STAT. § 346.94(2), could constitute employment discrimination.  *Id.* at 364.  We note, however, that the question we address today was not at issue in that case and certainly was not addressed by us. Additionally, the *City of Onalaska* decision is short on facts and unclear at times because even though the apparent "offense" about which the employee was questioned, charged, and ultimately found not guilty was "racing," we noted that LIRC's unchallenged factual findings included a finding "that [the employee] had been questioned and asked to give a statement, an investigation into his conduct had been completed, and a *criminal* charge was imminent at the time of his discharge."  *Id.* at 365 (emphasis added).  For these reasons and the fact *City of Onalaska* may be at odds with our earlier conclusion (or assumption) in *Miller Brewing Co. v. DILHR*, 103 Wis. 2d 496, 308 N.W.2d 922 (Ct. App. 1981), that the protections apply in relation to criminal offenses, we conclude that *City of Onalaska* has no precedential value with regard to the question we address in the case now before us.  *See Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) ("[O]nly the supreme court … has the power to overrule, modify or withdraw language from a published opinion of the court of appeals.").

offenses "pursuant to *any law enforcement or military authority*."[6] (Emphasis added.) To provide such protection in relation to non-Wisconsin criminal offenses in addition to Wisconsin criminal offenses, it makes sense that the legislature wrote § 111.32(1) as it did.

¶13 Significantly, the legislature included "pursuant to any … military authority" in WIS. STAT. § 111.32(1). But, as other courts have noted, the United States military justice system does not utilize the felony and misdemeanor designations Wisconsin utilizes. *See* Uniform Code of Military Justice, 10 U.S.C. §§ 801-946(a) (2023); *see also **Scott v. United States***, 392 A.2d 4, 7 (D.C. 1978) ("[M]ilitary offenses … are classified not as felonies or misdemeanors but, instead, by reference to the type of court-martial: 'general,' 'special,' and 'summary.' … Thus, if we were to construe [the statute] to provide only for enhancement of sentences when a prior offense was actually labeled 'felony,' we would be eliminating all military convictions from consideration …."); ***State v. Hernandez***, 944 P.2d 188, 192 (Kan. Ct. App. 1997); ***State v. Grubb***, 120 S.W.3d 737, 739 (Mo. 2003); ***State v. Williams***, No. 18CA51, unpublished slip op. ¶28 (Ohio Ct. App. Mar. 26, 2019); ***Cartagena v. Commonwealth***, 807 S.E.2d 223, 226 n.4 (Va. Ct. App. 2017); ***Apodaca v. People***, 712 P.2d 467, 471 (Colo. 1985); ***People v. Dashiell***, No. 313523, unpublished slip op. *4 (Mich. Ct. App. Feb. 11, 2014); ***State v. Horselooking***, 400 P.3d 189, 192 (Kan Ct. App. 2017). Thus, to provide protection

---

[6] As noted, *supra* note 3, the definition of "exempt offense" in WIS. STAT. § 111.335(4)(a)1. includes various specific crimes and "violation[s] of the law *of another jurisdiction* that would be [one of those specific crimes] if committed in this state." *See* § 111.335(1m)(b) (emphasis added). Similarly, "violent crime against a child" in § 111.335(4)(a)2. is defined to include various specific crimes and "violation[s] of the law *of another jurisdiction* that would be [one of those specific crimes] if committed in this state." Sec. 111.335(1m)(d)3. (emphasis added). The inclusion of this "violation[s] of the law of another jurisdiction" language in these statutes that are closely related to WIS. STAT. §§ 111.321 and 111.322 further shows that the legislature intended "or other offense" to refer to offenses from non-Wisconsin jurisdictions.

against arrest-record discrimination related to military offenses, the legislature needed to include language other than just "felony" and "misdemeanor"; it needed to include language similar to "or other offense."

¶14    Additionally, WIS. STAT. § 111.32(1) states that the arrest-record-discrimination protection applies to "any felony, misdemeanor or other offense pursuant to *any* law enforcement … authority." (Emphasis added.)  Assuming the legislature meant what it said by using the word "any" here, this language would include employment-discrimination protection related to arrest-record information from jurisdictions other than Wisconsin and the military, whether that be other states, territories, countries, or tribal nations.  Use of "or other offense" makes sense for this purpose.  New Jersey and Maine, for example, eschew the felony and misdemeanor designations for criminal offenses.  *See* ME. STAT. tit. 17-A, § 4 (2023); Maine Att'y Gen., Criminal Justice System https://www.maine.gov/ag/crime/criminal_justice_system.shtml (last visited Sep. 5, 2023) ("Crimes were traditionally classified as felonies … and misdemeanors ….  Maine no longer uses these categories, but [generally] classifies crimes as" Class A-E); *see also* **State v. Smith**, 677 A.2d 1058, 1060 n.6 (Me. 1996) (noting that "[t]he felony/misdemeanor distinction was eliminated by the enactment of the criminal code" in 1976); N.J. STAT. ANN. § 2C:1-4 (2023); *see also* **State v. Johnson**, 216 A.3d 986, 996 n.15 (N.J. Super. Ct. Law. Div. 2019) (noting that New Jersey "discontinued the use of the antiquated terms 'misdemeanor' and 'felony'" with a legislative enactment in 1978).  On the international front, various states in Australia, for example, abolished the distinction between felony and misdemeanor crimes years ago and now instead categorize crimes as either serious, minor, or

summary indictable offenses. *See Crimes Act 1900* (NSW) § 580E (Austl. 2023);[7] *Criminal Procedure Act 1921* (SA) § 5 (Austl. 2023);[8] *Criminal Law Consolidation Act 1935* (SA) § 5D (Austl. 2023).[9] Certain tribal nations also appear to identify crimes with designations other than felony and misdemeanor. *See* **Horselooking**, 400 P.3d at 192 (noting that "the Kickapoo Nation Tribal Code does not differentiate between felonies and misdemeanors"); KICKAPOO TRIBE OF OKLAHOMA CRIMINAL VIOLATIONS CODE, chs. B-H;[10] HOPI CODE, tit. III, § 3.4.1 (2012) (designating crimes as petty offenses, minor offenses, offenses, serious offenses, and dangerous offenses);[11] SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY CODE OF ORDINANCES, Sentencing, § 8-3 (2021) (designating crimes in Classes A-E).[12] Thus, if the legislature intended to protect against employment discrimination related to criminal arrest information from jurisdictions other than Wisconsin and the military, as we conclude it did, it would understandably use language in § 111.32(1) similar to "or other offense." In short, we have no problem rejecting the Cotas' contention that "or other offense" must mean civil offenses because the phrase would otherwise be "meaningless surplusage."

---

[7] https://legislation.nsw.gov.au/view/html/inforce/current/act-1900-040#sec.580E (last visited Dec. 18, 2023).

[8] https://www.legislation.sa.gov.au/__legislation/lz/c/a/criminal%20procedure%20act%201921/current/1921.1479.auth.pdf.

[9] https://www.legislation.sa.gov.au/__legislation/lz/c/a/criminal%20law%20consolidation%20act%201935/current/1935.2252.auth.pdf.

[10] https://www.kickapootribeofoklahoma.com/tribal-court (last visited Dec. 18, 2023).

[11] https://www.hopi-nsn.gov/wp-content/uploads/2013/05/Hopi-Code.pdf.

[12] https://www.srpmic-nsn.gov/wp-content/uploads/2021/08/CodeOfOrdinances-Complete.pdf.

¶15     The canon of construction known as *ejusdem generis*, which provides that "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed," *ejusdem generis*, BLACK'S LAW DICTIONARY (10th ed. 2014), further supports our conclusion that "or other offense" refers to criminal offenses from non-Wisconsin jurisdictions that utilize designations other than felony or misdemeanor.  This is so because that phrase follows "a list of specifics" that includes only offenses from the criminal "class," specifically felony and misdemeanor.  This consideration is further bolstered by the fact that, as previously noted, the actions listed under "arrest record" are either exclusively or more commonly associated with criminal offenses, not civil, municipal ones.

¶16     For all the foregoing reasons, we conclude the legislature did not include "or other offense" in order to make WIS. STAT. § 111.32(1)—and thus also WIS. STAT. §§ 111.321 and 111.322—applicable to civil, municipal offenses, but included it in order to extend the employment-discrimination protection in relation to criminal arrest information from non-Wisconsin jurisdictions that do not use the designations of felony or misdemeanor.[13]  As a result, these statutes do not aid the

---

[13] In concluding that "or other offense" in WIS. STAT. § 111.32(1) includes civil offenses, the dissent states that "the phrase 'felony, misdemeanor or other offense' … has been used by the legislature in other statutes to describe municipal ordinance violations."  Dissent, ¶35.  But reviewing the statute the dissent directs us to, WIS. STAT. § 134.71(5)(c), makes it obvious why the use of "or other offense" in that particular instance refers to civil offenses.  This largely unrelated statute (dealing with the requirement that pawnbrokers and secondhand article and jewelry dealers secure a license from the municipal clerk in order to operate) indicates that an application form for such license shall require, inter alia:

> A statement as to whether the applicant has been convicted within the preceding 10 years of a felony or within the preceding 10 years of a misdemeanor, statutory violation punishable by *forfeiture* or *county or municipal ordinance violation* in which the circumstances of *the felony, misdemeanor or other offense*

Cotas, and the District's termination of them based upon the civil, municipal charge information it received does not constitute unlawful employment discrimination. Accordingly, we reverse the circuit court order affirming LIRC's decision, and we remand to the circuit court with instructions to remand the matter to LIRC with direction to dismiss the Cotas' complaints on their merits.

*By the Court.*—Order reversed and cause remanded with directions.

---

> substantially relate to the circumstances of the licensed activity and, if so, the nature and date of the offense and the penalty assessed.

§ 134.71(5)(c) (first emphasis added; other emphases added by Dissent, ¶13).

With the legislature's specific references to "a felony," "a misdemeanor," and "statutory violation punishable by forfeiture or county or municipal ordinance violation," it becomes immediately clear to any reader that, in this particular context, "or other offense" in the subsequent phrase "the felony, misdemeanor or other offense" is referring to the civil offenses of "statutory violation punishable by forfeiture or county or municipal ordinance violation." Indeed, "or other offense" here could be referring to nothing else. Noticeably absent from WIS. STAT. § 111.32(1), however, is reference to any class of civil offenses such as "statutory violation punishable by forfeiture or county or municipal ordinance violation." The only specific references in § 111.32 are to offenses from the criminal class. WISCONSIN STAT. § 134.71(5)(c) only highlights for us that when the legislature uses the phrase "felony, misdemeanor or other offense" and intends "or other offense" to include civil offenses, it uses specific reference to offenses from the civil class to signify this intent.

¶17    GROGAN, J. (*concurring*).  The Wisconsin Fair Employment Act (WFEA) prohibits employers from discriminating against an employee (or prospective employee) based upon the employee's arrest record, which "includes, but is not limited to, information indicating that an individual has been questioned, apprehended, taken into custody or detention, held for investigation, arrested, charged with, indicted or tried for any felony, misdemeanor or other offense pursuant to any law enforcement or military authority."  WIS. STAT. §§ 111.321, 111.322, and 111.32(1).  I agree with the Majority's conclusion that "other offense" as used in § 111.32(1)'s definition of "arrest record" is limited to criminal offenses and therefore does not extend WFEA "arrest record" protection to municipal offenses, and I therefore join the Majority in full.[1]  I write separately, however, to highlight how unreasonable the Dissent's interpretation would be in this case.

---

[1]  I note, however, that this case could also be resolved on the grounds that the Record does not substantially support LIRC's factual finding that the District discharged the Cotas solely *because* the Cotas received municipal citations and the prosecutor indicated his belief that he could obtain a conviction.

¶18    As the Dissent acknowledges, WIS. STAT. § 111.335(2)(b) provides a
narrow exception to arrest-record discrimination. Dissent, ¶36. Specifically, it
provides that:

---

LIRC made a factual finding that "Casey [the District's head of human resources] decided to discharge [the Cotas] because they had been cited for municipal theft and the prosecutor had told her that, although he believed he could convict the [Cotas], he anticipated being able to reach a settlement agreement with them in which they would pay restitution." (Emphasis added.) However, LIRC also found that "[a]s a result of information gleaned during" the District's investigation, "Casey formed the belief that [the Cotas] had kept scrap money belonging to the district." In rationalizing these findings, LIRC stated in its "Memorandum Opinion" that "Casey testified that, in combination with her personal belief" that the Cotas "had stolen funds from" the District, "she relied on three new pieces of information that came to her attention during the course of the criminal proceedings"—the municipal citations, the prosecutor's comments, and the anticipated plea agreement—in deciding to terminate the Cotas and that those three "new pieces of information are what pushed her to make the" termination decision. (Emphasis added.) LIRC further noted that: (1) the District "believed, as a result of its internal investigation, that the [Cotas] may have stolen money belonging to the district"; (2) the District "had formed [this] belief" based on its own investigation "[a]s far back as April of 2014"; and (3) the District "was not motivated to act on that belief alone." (Emphases added.)

LIRC's recognition that the District had formed its own belief about the Cotas' involvement in the theft of District funds prior to the existence of any arrest record undermines its finding that the District made its termination decision because the Cotas had been cited for municipal theft as does its conclusion that the District did not make its termination decision based on its "belief alone." Indeed, LIRC's recognition that the District did not make its decision based on its "belief alone" indicates that there were actually multiple bases for the termination decision— not just "arrest record" information. (Emphasis added.) And, based on LIRC's recognition that the District had formed its own prior belief and that its decision was not based on its belief alone, it cannot be said that there is substantial evidence in the Record that supports LIRC's finding that the District's termination decision was "because [the Cotas] had been cited for municipal theft," the prosecutor indicated a likely conviction, and there was an anticipated settlement agreement. (Emphasis added.) *See Amazon Logistics, Inc. v. LIRC*, 2023 WI App 26, ¶19, 407 Wis. 2d 807, 992 N.W.2d 168 ("Substantial evidence is" that which "'is relevant, probative, and credible, and which is in a quantum that will permit a reasonable factfinder to base a conclusion upon it.'" (citation omitted)); WIS. STAT. § 108.09(7)(f).

Therefore, had we directly addressed LIRC's decision, I would have concluded that at most, there is substantial evidence that the District's decision was based on a combination of the District's own pre-arrest record beliefs and the subsequent information it obtained after the Cotas were issued municipal citations for theft—not only on arrest-record information. And, having reached that conclusion, I would have also concluded that LIRC erroneously applied *City of Onalaska v. LIRC*, 120 Wis. 2d 363, 354 N.W.2d 223 (Ct. App. 1984), to the facts at hand.

2

> *it is not* employment discrimination because of arrest record to refuse to employ or license, or to suspend from employment or licensing, any individual who is subject to *a pending criminal charge if the circumstances of the charge substantially relate to the circumstances of the particular job* or licensed activity, except as provided in sub. (4)(a).[2]

Sec. 111.335(2)(b) (emphases added). Thus, had the Cotas been charged criminally for theft/misappropriation of the District's funds (as opposed to the municipal charges issued here), the District could have terminated (i.e., "refuse[d] to employ") the Cotas without violating the WFEA because the pending charge was, without question, substantially related to the Cotas' job.[3]

---

[2] WISCONSIN STAT. § 111.335(4)(b) pertains to discrimination in licensing and does not apply here.

[3] The Dissent suggests that WIS. STAT. § 111.335(2)(b) does not allow an employer to terminate an employee while a charge that is substantially related to the job remains pending and cites to *City of Onalaska* in support of that proposition. Dissent, ¶44 n.6. *City of Onalaska*, however, did not cite—let alone discuss—the arrest-record exception referenced herein. Rather, the issue in *City of Onalaska* was "whether an employer discriminates if the employer discharges an employe because the employer believes on the basis of its investigation that the employe has engaged in an illegal activity." 120 Wis. 2d at 364. It therefore does not support the Dissent's suggestion that an employer cannot terminate an employee while a charge remains pending where the § 111.335(2)(b) exception otherwise applies. Moreover, to the extent the Dissent also contends that *City of Onalaska* stands for the proposition that a discharge is allowed only upon either a conviction or if the employer has another independent basis for discharge besides arrest record, the Dissent is incorrect. *City of Onalaska does* hold that an employer who discharges for a reason independent from the arrest record is not discriminating under WFEA's arrest-record statute. 120 Wis. 2d at 367. But it does *not* say the arrest-record exception only applies after conviction. That exception comes in a different section of the WFEA—the conviction-record discrimination subsection (§ 111.335(3))—which is not at issue in this case. The Dissent's conflation of the two subsections effectively renders the arrest-record exception illusory.

As for WIS. STAT. § 111.335(2)(b), while the statutory language does not specifically use the word "terminate," "termination," "fire," etc., it does state that an employer can "refuse to employ" an individual under the circumstances set forth therein. "[R]efuse to employ" is not limited to prospective employment only, and the phrase "refuse to employ" is functionally equivalent to "terminate," "termination," "fire," etc. Accordingly, contrary to the Dissent's suggestion, an employer can terminate an employee pursuant to § 111.35(2)(b) while a criminal charge remains pending so long as the charge is "substantially relate[d] to the circumstances of the particular job[.]" *Id.*

3

¶19 WISCONSIN STAT. § 111.335(2)(b)'s arrest-record exception for pending criminal charges that are substantially related to the employee's job makes clear that interpreting "other offense" as including municipal offenses would lead to an unreasonable and absurd result. Specifically, if "other offense" includes municipal charges, then there would be *no* arrest-record exception for the pending *municipal* charges at issue here because § 111.335(2)(b)'s exception applies only to pending *criminal* charges. Thus, under the Dissent's interpretation of "other offense," the District *would have* violated the WFEA for terminating the Cotas because their conduct was charged municipally but would *not* have violated the WFEA if the Cotas had been charged criminally even though the *conduct* resulting in the charge—theft/misappropriation of the District's funds—was *exactly the same* under either scenario.

¶20 Given that the conduct at issue was the same regardless of how it was charged—municipally or criminally—it would make little sense to effectively require the District to continue the Cotas' employment based on nothing more than the *charging authority's* decision to issue municipal, as opposed to criminal, charges. There is no reasonable justification for such a result, and we do not construe statutes in an unreasonable manner. *See **State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶¶205-46, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.").

¶21 To the contrary, the Majority's conclusion that municipal offenses are *not* included within the meaning of "other offense" is the only reasonable interpretation. To wit, concluding that "arrest record" does not include municipal offenses leads to consistent application of the law. The District here could lawfully

4

terminate the Cotas based on the pending municipal charges (that were, again, related to their employment) just as the District could have lawfully terminated their employment pursuant to WIS. STAT. § 111.335(2)(b) had the Cotas instead been charged criminally.

¶22 Based on the foregoing, WIS. STAT. § 111.335(2)(b) clearly supports the Majority's conclusion that "other offense" as used in the definition of "arrest record" refers only to criminal offenses, s*ee* WIS. STAT. § 111.32(1), because if it did not, then an employer could terminate an employee for a pending criminal charge that is substantially related to the employee's job pursuant to § 111.335(2)(b) but would be prohibited from terminating the same employee for the exact same job-related conduct if the pending charge was municipal instead. This defies logic, and while we are to "liberally construe[]" the WFEA, we are to do so only "to the *fullest extent practicable*[.]" WIS. STAT. § 111.31(3) (emphasis added). It certainly is not practicable to construe the WFEA such that it requires an employer to continue the employment relationship where the employee is subject to a pending *municipal* charge that is "substantially relate[d] to the circumstances of the" employee's job when it would not be required to do so for the corresponding criminal charge, which is exactly what would occur under the Dissent's interpretation. *See* § 111.335(2)(b). Accordingly, I respectfully concur.

No.    2022AP1158(D)


¶23    NEUBAUER, J. (*dissenting*). The Wisconsin Fair Employment Act's prohibition on arrest record discrimination prevents employers from terminating an employee based on mere suspicions or unproven allegations of misconduct.[1]  It prohibits employers from "rely[ing] on" assertions of misconduct (as opposed to a conviction) made "by another person or entity," pursuant to law enforcement authority.  *City of Onalaska v. LIRC*, 120 Wis. 2d 363, 367, 354 N.W.2d 223 (Ct. App. 1984).  According to LIRC's findings in this case, that is what happened to the Cotas.  At the conclusion of the District's investigation, it believed that the Cotas had misappropriated District funds.  But the District did not terminate their employment at that point.  Instead, it waited until a local prosecutor informed the District that although he believed he could convict the Cotas of municipal theft, he was willing to dismiss the charges in exchange for their payment of $500, an arrangement to which the District agreed.  The District terminated the Cotas the day after receiving this information.

¶24    The majority "accept[s] LIRC's finding that the District terminated the Cotas based upon the information it received related to" the municipal theft citations issued to them pursuant to law enforcement authority.  Majority, ¶3.  But it concludes that the District did not violate the Act's prohibition on arrest record discrimination by determining that the legislature did not intend to prohibit discharge based on suspicions or unproven charges for civil offenses.  *See* WIS.

_____

[1]  I refer to the Wisconsin Fair Employment Act herein as the WFEA or the "Act."

STAT. § 111.32(1) (2021-22).[2] The majority contends the legislature did not mean that a civil offense is "any … offense" pursuant to "any" local law enforcement authority, and thus information about a civil offense is not part of an "[a]rrest record" under § 111.32(1). Majority, ¶7. The majority reaches this conclusion by limiting the phrase "other offense" to "criminal offenses from non-Wisconsin jurisdictions that utilize designations other than felony or misdemeanor." Majority, ¶15. I agree that information regarding non-Wisconsin criminal offenses fits within the broad statutory definition of arrest record. But I disagree with the majority's conclusion that the legislature excluded from the definition noncriminal Wisconsin offenses like the unproven dismissed civil charges issued against the Cotas pursuant to law enforcement authority.

¶25 The statutory analysis that underlies the majority's conclusion is unsound in three principal respects. First, the majority's interpretation is at odds with the broad language the legislature used to define "arrest record." Most notably, the definition encompasses information related to "any" offense pursuant to "any" law enforcement authority and specifies that an arrest record "is not limited to" the information listed in the statute. WIS. STAT. § 111.32(1). The majority effectively reads these terms out of the statute, a cardinal violation of statutory interpretation. *See **Banuelos v. University of Wis. Hosp. & Clinics Auth.***, 2023 WI 25, ¶16, 406 Wis. 2d 439, 988 N.W.2d 627 ("the court is not at liberty to disregard the plain, clear words of the statute") (quoting ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110). Second, the majority improperly incorporates external meanings of "arrest" into the statutory definition and adopts a restrictive interpretation of "offense" that is contrary to the statute's

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

text, surrounding context, closely related statutes, and long-standing usage of the term "offense" by our legislature and courts to refer to both criminal and noncriminal violations of law. Finally, the majority's interpretation leads to an arbitrary result: where a municipality enacts an ordinance that incorporates by reference a Wisconsin criminal statute, the legality of an employer's decision to terminate an employee who is charged with engaging in the prohibited conduct can turn on whether the employee is charged under the ordinance rather than directly under the statute. Because I can discern no principled basis for such an outcome, I respectfully dissent.

## I.

¶26    In this case, the Cotas contend that the District violated the WFEA by terminating their employment based on their arrest records. *See* WIS. STAT. §§ 111.321, 111.322(1). Under the Act, an arrest record "includes, but is not limited to, information indicating that an individual has been questioned, apprehended, taken into custody or detention, held for investigation, arrested, charged with, indicted or tried for any felony, misdemeanor or other offense pursuant to any law enforcement or military authority." WIS. STAT. § 111.32(1). When we interpret a statute, our task is to determine its meaning "so that it may be given its full, proper, and intended effect." *Kalal*, 271 Wis. 2d 633, ¶44.

¶27    I begin by recognizing that the statutory definition of arrest record is indisputably broad. We acknowledged as much just last year. *See **Vega v. LIRC**,* 2022 WI App 21, ¶28, 402 Wis. 2d 233, 975 N.W.2d 249, *review denied* (WI Sept. 13, 2022) (No. 2021AP24). In addition to the broad language in the definition, the legislature has directed us to "liberally construe[]" the Act to accomplish its purpose of "encourag[ing] and foster[ing] to the fullest extent practicable the

employment of all properly qualified individuals regardless of" their arrest records. WIS. STAT. § 111.31(3).

¶28 Several terms in the definition of arrest record embody its broad scope. First, the definition encompasses specified information relating to "*any …* other offense pursuant to *any* law enforcement or military authority." WIS. STAT. § 111.32(1) (emphases added). It is commonly understood that the legislature's inclusion of the word "any" in a statute typically signals an intent that the statute apply expansively to the items that follow. *See **Babb v. Wilkie***, 589 U.S. 399, 405 n.2 (2020) ("We have repeatedly explained that 'the word "any" has an expansive meaning.'") (quoting ***Ali v. Federal Bureau of Prisons***, 552 U.S. 214, 219 (2008)); ***Urban v. Grasser***, 2001 WI 63, ¶¶25-26, 243 Wis. 2d 673, 627 N.W.2d 511. Here, the legislature's decision to modify the phrases "felony, misdemeanor or other offense" and "law enforcement or military authority" with the word "any" "indicates broad application when it comes to the [offenses] that fall within the scope of the provision." *See **Marotz v. Hallman***, 2007 WI 89, ¶25, 302 Wis. 2d 428, 734 N.W.2d 411. The majority's restrictive construction effectively reads "any" out of the statute twice, a bedrock error of statutory interpretation. *See **Banuelos***, 406 Wis. 2d 439, ¶16.

¶29 In addition, the definition expressly states that arrest record "includes, but is not limited to," the information described in the statute. WIS. STAT. § 111.32(1). Like "any," this phrase is a signal to construe arrest record broadly. *See **State v. Popenhagen***, 2008 WI 55, ¶41, 309 Wis. 2d 601, 749 N.W.2d 611 ("So too in legislative parlance, the phrase '*including* but not limited to' in a statute is generally given an expansive meaning, indicating that the words that follow the general phrase are but a part of the whole."). The legislature's inclusion of these

broad terms counsels against the "crabbed reach" of the statute favored by the majority. *See Allen v. Milligan*, 599 U.S. 1, 40 (2023).[3]

## II.

¶30    The majority begins its analysis by examining the first word in WIS. STAT. § 111.32(1), "[a]rrest." Citing several dictionary definitions, the majority states that arrest is "generally associated" with criminal charges. Majority, ¶8. We frequently look to dictionary definitions for guidance in determining the plain and ordinary meaning of undefined words in statutes. *See Noffke ex rel. Swenson v. Bakke*, 2009 WI 10, ¶10, 315 Wis. 2d 350, 760 N.W.2d 156. Here, however, the word "arrest" is only one of many actions listed in the statute and is part of the phrase that is given a special and specific definition in § 111.32(1). As noted above, that definition is broad: it encompasses "a number of actions which would not, at first glance, appear to fit the definition of 'arrest record.' For example, an individual who has been questioned for any offense is defined as having an 'arrest record' despite not having been arrested, nor having a record." *City of Onalaska*, 120 Wis. 2d at 367 (Dykman, J., dissenting). Focusing on one among many actions listed in the statute and layering a narrow dictionary definition of "arrest" over the broader statutory definition runs afoul of our statutory interpretation methodology. *See Wendy M. v. Helen E.K.*, 2010 WI App 90, ¶11, 327 Wis. 2d 749, 787 N.W.2d 848 (rejecting application of a dictionary definition because term was specially defined within "the applicable statutory scheme").

---

[3] For example, "includes, but is not limited to" would, in my view, bring offenses outside of Wisconsin within the reach of WIS. STAT. § 111.32(1). But nothing in the broad reach of the statutory definition necessarily excludes Wisconsin offenses.

¶31 The majority compounds this error with little, if any, inquiry into the plain and ordinary meaning of the undefined phrase at the heart of its holding— "other offense." As shown below, there is ample support for the conclusion that the term "offense," particularly because it is followed by "pursuant to any law enforcement … authority," includes noncriminal violations of law, which are clearly also pursued by law enforcement. *See* WIS. STAT. § 111.32(1).

¶32 The word "offense" has multiple dictionary definitions. *See generally Offense*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1997). Thus, "the applicable definition depends upon the context in which the word is used." *Kalal*, 271 Wis. 2d 633, ¶49. In WIS. STAT. § 111.32(1), offense is used in its legal sense, so the applicable definition is "an infraction of law." *See Offense*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1997); *see also Offense*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabr. 1993) (same). Black's Law Dictionary supplies a similar definition—"A violation of the law." *Offense*, BLACK'S LAW DICTIONARY (11th ed. 2019); *Anderson v. Hebert*, 2013 WI App 54, ¶19, 347 Wis. 2d 321, 830 N.W.2d 704 (citing legal dictionary as evidence of the plain meaning of a term in a statute). That well-known legal dictionary explains further that offense may "signify[] a crime of lesser grade, or an act not indictable, but punishable summarily or by the forfeiture of a penalty." *Offense*, BLACK'S LAW DICTIONARY (11th ed. 2019) (quoting 22 C.J.S. *Criminal Law* § 3 (1989)). Together, these sources reflect an understanding of "offense" that is not confined to violations of criminal law but instead refers to violations of law more generally.

¶33 Looking next at the statutory definition as a whole, I draw the opposite conclusion from the majority concerning the list of actions that precede the phrase "other offense." *See Kalal*, 271 Wis. 2d 633, ¶46 (explaining that courts do not

interpret words in a statute in isolation but rather draw meaning from the context in which they are used). Of those actions, only one—"indicted"—is unique to criminal offenses. *See* WIS. STAT. § 111.32(1). The others—"questioned, apprehended, taken into custody or detention, held for investigation, arrested, charged with, … or tried"—can be (and frequently are) undertaken with respect to criminal and noncriminal violations of law alike. *See id.* Every day, across our state, law enforcement officials question, hold for investigation, arrest, and charge individuals with violations of traffic statutes and municipal ordinances that are treated as civil offenses. To take just one example, a first offense of operating a motor vehicle while intoxicated is punishable by a forfeiture, a civil penalty. *See* WIS. STAT. § 346.65(2)(am)1.; *see also* § 346.65(4m) (same for a first offense of reckless driving); *see generally* WIS. STAT. § 939.12 (violations of law punishable only by forfeitures are not crimes). The context provided by the conduct identified in the statute that may lead to the creation of an arrest record suggests that "other offense" is not limited to violations of criminal law.

¶34 We also discern meaning from surrounding or closely related statutes—that is, those in the same chapter or that "reference one another, or use similar terms." *See State v. Lickes*, 2021 WI 60, ¶18, 397 Wis. 2d 586, 960 N.W.2d 855. Like the majority, I look first to WIS. STAT. § 111.335, which contains exceptions to the prohibition on arrest record discrimination. The word "offense" appears in § 111.335 sixteen times. In four instances, the word appears as part of the phrase "exempt offense," which § 111.335 specifically limits to certain criminal violations. *See* § 111.335(1m)(b) (defining "[e]xempt offense" to mean violations of specific Wisconsin criminal statutes or their non-Wisconsin equivalents). In other places, however, "offense" is used to describe a noncriminal violation of law. *See* § 111.335(3)(f) (referring to conviction "of any offense under [WIS. STAT.

7

§] 440.52(13)(c)," which imposes a civil forfeiture on persons who knowingly use or claim false academic credentials).

¶35    Elsewhere in WIS. STAT. ch. 111, the legislature has used "offense" to describe noncriminal violations of law. *See, e.g.*, WIS. STAT. § 111.70(7m)(c)1.b. & (c)2. (identifying forfeitures imposed on labor organizations and individuals that unlawfully conduct strikes and stating that "[e]ach day of continued violation constitutes a separate offense"). And finally, the phrase "felony, misdemeanor or other offense" that is found in WIS. STAT. § 111.32(1) has been used by the legislature in other statutes to describe municipal ordinance violations. *See* WIS. STAT. § 134.71(5)(c) (requiring application for license to operate secondhand dealership to include "[a] statement as to whether the applicant has been convicted within the preceding 10 years of a felony or within the preceding 10 years of a misdemeanor, statutory violation punishable by forfeiture *or county or municipal ordinance violation* in which the circumstances of *the felony, misdemeanor or other offense* substantially relate to the circumstances of the licensed activity and, if so, the nature and date of the offense and the penalty assessed" (emphases added)). From these closely related provisions, it is apparent that the legislature uses the term "offense" to encompass civil violations and uses special definitions when it wishes to limit the scope of that term to criminal violations.

¶36    The majority focuses on WIS. STAT. § 111.335(2)(b), which states that an employer does not commit arrest record discrimination when it suspends or refuses to employ an individual who is "subject to a pending criminal charge." Majority, ¶10. I agree that this provision functions as an exception to the broad prohibition against arrest record discrimination because the prohibition is expressly "subject to" § 111.335. *See* WIS. STAT. § 111.321. But contrary to the majority's view, the exception does not define the prohibition. And this exception is perfectly

consistent with an interpretation of "offense" that is not limited to criminal violations. The exception in § 111.335(2)(b) is necessarily narrower in scope than the general rule prohibiting arrest record discrimination set forth in § 111.321. It carves out of the general prohibition a limited situation in which an individual has a certain type of offense, a pending criminal charge. The existence of this exception does not support the majority's restrictive interpretation of "offense." To the contrary, it shows that when the legislature wishes to specify a narrower class of (criminal) offenses, it uses the word "criminal" to do so.

¶37 More broadly, Wisconsin's legislature and courts repeatedly use the word "offense" to refer to noncriminal violations of law generally and to municipal ordinance violations in particular. Such uses of "offense" appear throughout our code. *See, e.g.*, WIS. STAT. § 66.0111(1) (allowing law enforcement or court officials to accept a bond from person "arrested for the violation of a city, village or town ordinance" to secure the person's "appearance in the court having jurisdiction of the offense"); WIS. STAT. § 192.47 (permitting police officers employed by railway companies to "arrest, with or without warrant, any person who in their presence commits upon the premises [or property] of the company … any offense against the laws of this state or the ordinances of any town, city or village"); WIS. STAT. § 345.11(2) (specifying that uniform traffic citation form shall include "the offense alleged, the time and place of the offense, [and] the section of the statute or ordinance violated"); WIS. STAT. § 349.115(1) (empowering a political subdivision to "authorize a law enforcement officer to impound any vehicle used in the commission of a violation of … a local ordinance in strict conformity with [WIS. STAT. §] 346.62 at the time of issuing a citation for the offense"); WIS. STAT. § 778.10 (specifying that if a municipal "ordinance or regulation imposes a penalty or forfeiture for several offenses or delinquencies, the complaint [seeking such

forfeiture or penalty] shall specify the particular offenses or delinquency for which the action is brought").

¶38     Wisconsin courts have also frequently employed this common usage of "offense." References to noncriminal offenses in Wisconsin case law date as far back as 1863, when a justice of our supreme court referred to trial for "a mere civil offense" in a case examining President Lincoln's suspension of the writ of habeas corpus. *In re Kemp*, 16 Wis. 382, [*359], 416, [*392] (1863). More recently, both before and after the legislature added the prohibition on arrest record discrimination to the WFEA in 1977,[4] this court and our supreme court repeatedly used the word "offense" to refer to municipal ordinance violations and other noncriminal violations of law. *See, e.g.*, *City of Milwaukee v. Stachelski*, 185 Wis. 142, 143-44, 200 N.W. 769 (1924) ("It has uniformly been held in this state that, where an ordinance provides for a penalty for the commission of a petty offense and a state statute covers the same subject, that there may be two distinct offenses[.]"); *State ex rel. Prentice v. County Ct.*, 70 Wis. 2d 230, 241-42, 234 N.W.2d 283 (1975) ("[V]iolations of municipal ordinances are minor offenses for which a forfeiture is the only permissible direct punishment."); *State v. Peterson*, 104 Wis. 2d 616, 621, 312 N.W.2d 784 (1981) ("That the legislature intended that violations of state traffic laws involving forfeitures be treated as civil offenses is clear from the legislative history of chapter 346, Stats. 1977."); *State v. Folk*, 117 Wis. 2d 42, 47, 342 N.W.2d 761 (Ct. App. 1983) (describing first violation of statute prohibiting operating a motor vehicle while intoxicated as "a civil offense"); *State v. Wilks*, 121 Wis. 2d 93, 106, 358 N.W.2d 273 (1984) ("Consequently, we hold that a person who is lawfully in custody for a civil offense may be required to participate in a lineup for

---

[4] *See* 1977 Wis. Laws ch. 125, §§ 2-4.

an unrelated criminal offense."); ***State v. Olson***, 175 Wis. 2d 628, 631, 498 N.W.2d 661 (1993) (describing reduction of first-offense operating after revocation "from a criminal to a civil offense"); *see also **Welsh v. Wisconsin***, 466 U.S. 740, 753-54 (1984) (assessing constitutionality of warrantless home entry to arrest an individual "for a noncriminal, traffic offense" and observing that Wisconsin "has chosen to classify the first offense for driving while intoxicated as a noncriminal, civil forfeiture offense for which no imprisonment is possible").

¶39    The pre-enactment usages of "offense" are particularly useful in ascertaining common meaning.  *See **United Am., LLC v. DOT***, 2021 WI 44, ¶6, 397 Wis. 2d 42, 959 N.W.2d 317 (explaining that the common meaning of statutory terms is informed by "how the court had interpreted those terms prior to the legislature enacting the statute in question"); ***Bostock v. Clayton County***, 590 U.S. 644, 654 (2020) ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment.").

¶40    The majority's interpretation of "other offense" in WIS. STAT. § 111.32(1) as limited to non-Wisconsin criminal offenses cannot be squared with the long-standing and widely recognized plain meaning of "offense" that includes municipal ordinance violations and other noncriminal offenses.  In adopting a restrictive construction of "offense," the majority effectively adds the word "criminal" before it in the statute, which is beyond our remit.  *See **State v. Neill***, 2020 WI 15, ¶23, 390 Wis. 2d 248, 938 N.W.2d 521 (explaining that "courts should not add words to a statute to give it a certain meaning" but instead should "interpret the words the legislature actually enacted into law" (citations omitted)).

¶41    In aid of its interpretation, the majority invokes the *ejusdem generis* canon of construction, which provides that

> [w]hen a statute is passed which enumerates several specific items encompassed in the purview of the statute and then follows the specifics with a general phrase, it is reasonable to conclude that the general phrase was intended to cover only other items that fall within the general category of those enumerated.

*See* **La Barge v. State**, 74 Wis. 2d 327, 332, 246 N.W.2d 794 (1976). This canon, though "well-established and useful … is neither final nor exclusive." **Helvering v. Stockholms Enskilda Bank**, 293 U.S. 84, 89 (1934). Here, it leads the majority astray for two reasons. First, because the plain and ordinary meaning of "offense" is clear and applicable in WIS. STAT. § 111.32(1), it is unnecessary (and indeed improper) to apply the canon to interpret that word in a manner that displaces that meaning. *See* **State v. Peters**, 2003 WI 88, ¶14, 263 Wis. 2d 475, 665 N.W.2d 171. Second, the canon does not restrict the meaning of a general term "[i]f, upon a consideration of the context and the objects sought to be attained and of the act as a whole, it adequately appears that the general words were not used in the restricted sense suggested by the rule[.]" **Helvering**, 293 U.S. at 89; *see also* 2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 47:22 (7th ed. 2007) ("[C]ourts do not apply the rule of *ejusdem generis* if it results in a construction inconsistent with the clear legislative intent or purpose evinced by a statute's legislative history, other controlling rules of construction, or statutes *in pari materia*." (footnotes omitted)). Such is the case here; the breadth of the definition of arrest record and the legislative directive to liberally construe the Act weigh against application of the canon to restrict "offense" in the manner favored by the majority.

¶42 The majority also discusses two cases that refer to the prohibition on arrest record discrimination, *City of Onalaska* and *Miller Brewing Co. v. DILHR*, 103 Wis. 2d 496, 308 N.W.2d 922 (Ct. App. 1981). While it correctly notes that

12

neither case is squarely on point, it quotes extensively from *Miller Brewing* and relegates *City of Onalaska* to a footnote, characterizing *City of Onalaska* as potentially in conflict with "our earlier conclusion (or assumption) in *Miller Brewing* … that the protections apply in relation to criminal offenses." Majority, ¶11 n.5. This treatment is exactly backwards. The employee in *Miller Brewing* was terminated for failing to disclose prior criminal convictions on his job application before the WFEA was amended to prohibit arrest and conviction record discrimination. *Miller Brewing*, 103 Wis. 2d at 497, 500. We specifically noted this in our opinion and prefaced our discussion of those amendments by saying it was "irrelevant to the issue presented by [that] case." *Id.* at 504. Moreover, because the employee in *Miller Brewing* had a criminal conviction record, it is reasonable to view our discussion of the amendments in that case as bearing primarily on the conviction record prohibition, as applied to a criminal conviction. The majority thus exaggerates the significance our self-described "irrelevant" discussion in *Miller Brewing* has in informing the meaning of "offense" in WIS. STAT. § 111.32(1). I do not find that discussion to be a source of meaningful guidance in this case.

¶43 In contrast, *City of Onalaska* involved a termination resulting from an employee's participation in an incident of racing. 120 Wis. 2d at 364-65. Then, as now, Wisconsin law classified racing as a civil offense punishable by forfeiture. WIS. STAT. §§ 346.94(2), 346.95(2). Although our opinion in that case refers to a LIRC finding that "a criminal charge was imminent" at the time of the employee's discharge, the commission also found that the employee had been discriminated against on the basis of arrest record "even though he had not been arrested or charged with criminal activity when he resigned." *City of Onalaska*, 120 Wis. 2d

13

at 365. I see no conflict between *City of Onalaska* and *Miller Brewing* that would preclude us from considering the latter decision as persuasive guidance in this case.[5]

## III.

¶44 We should avoid interpretations of statutes that lead to arbitrary results. *See Jaeger Baking Co. v. Kretschmann*, 96 Wis. 2d 590, 600, 292 N.W.2d 622 (1980); *Lang v. Lions Club of Cudahy Wis., Inc.*, 2020 WI 25, ¶64 n.3, 390 Wis. 2d 627, 939 N.W.2d 582 (Rebecca Grassl Bradley, J., concurring). The majority's decision today ignores that caution. Like the City of Oconomowoc, other municipalities in Wisconsin have incorporated by reference Wisconsin criminal statutes into their codes, such that violations of those statutes are also violations of the municipal codes. Under the majority's analysis, whether the WFEA bars an employer from firing an employee who is charged with violating such an incorporated statute, if the conduct is not substantially related to the employee's job,

---

[5] Additionally, though we are not bound by LIRC's interpretations or applications of the WFEA, it has found an individual who was issued a warning for following another vehicle too closely to have an arrest record under the WFEA, even though the individual "was not charged with or convicted of a crime or other offense [or] subject to a fine or any other penalty":

In this case, the complainant was stopped by police and questioned about his driving. Although the complainant only received a warning, the questioning could have resulted in a citation. These factors are sufficient to warrant a conclusion that the complainant had an arrest record and was therefore in a protected category for purposes of the Act.

*Hunter v. WEL Cos.,* ERD Case No. 201203021 (May 21, 2015). Though LIRC's decisions do not bind us, we have looked to its application of the WFEA as persuasive in interpreting the Act's provisions. *See Vega v. LIRC*, 2022 WI App 21, ¶36, 402 Wis. 2d 233, 975 N.W.2d 249, *review denied* (WI Sept. 13, 2022) (No. 2021AP24).

turns on whether the employee is charged with violating the municipal code or the statute.[6]

---

[6] If the conduct is substantially related to the employee's job, and is charged criminally, the employer may suspend the employee per WIS. STAT. § 111.335(2)(b), but it may not terminate the employee because of the charge while it remains pending. The employer may only terminate the employee if (1) the employee is convicted of the offense where the circumstances of the offense substantially relate to the circumstances of the job, *see* WIS. STAT. § 111.335(3)(a)1., or (2) if the employer concludes from its own independent investigation that the employee had, in fact, committed an offense. *See City of Onalaska v. LIRC*, 120 Wis. 2d 363, 367, 354 N.W.2d 223 (Ct. App. 1984); *Vega*, 402 Wis. 2d 233, ¶¶2, 42.

The concurrence says I have misread WIS. STAT. § 111.335(2)(b) to not allow an employer to terminate an employee "who is subject to a pending criminal charge if the circumstances of the charge substantially relate to the circumstances of the particular job[.]" Concurrence, ¶¶18-19 & n.3. The concurrence says termination is permissible in that circumstance because § 111.335(2)(b) allows the employer to "refuse to employ" the charged individual, and "refuse to employ" is "functionally equivalent" to "terminate" or "fire." Concurrence, ¶18 n.3.

I am not persuaded by that reading of WIS. STAT. § 111.335(2)(b), for two reasons. First, other provisions in § 111.335 include both "refuse to employ" and "terminate." For example, § 111.335(3)(a) provides that "it is not employment discrimination because of conviction record to *refuse to employ* or license, or to bar or *terminate from employment* or licensing, any individual if any of the following applies …." (emphases added). Similarly, § 111.335(3)(e) states that "it is not employment discrimination because of conviction record for an educational agency to *refuse to employ* or to *terminate from employment* an individual who has been convicted of a felony and who has not been pardoned for that felony." (emphases added). If we are to interpret statutory language "where possible to give reasonable effect to every word, in order to avoid surplusage," *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110, then "refuse to employ" must mean something other than "terminate" in these provisions. Construing "refuse to employ" to mean "refuse to hire" gives that phrase a distinct meaning and avoids the surplusage concern. And because we generally interpret words or phrases that appear multiple times in a statute to have "the same meaning every time [they are] used," *DWD v. LIRC*, 2018 WI 77, ¶20, 382 Wis. 2d 611, 914 N.W.2d 625, the phrase "refuse to employ" should have the same meaning in § 111.335(2)(b) that it has in § 111.335(3)(a) and (3)(e).

¶45 The legislature used undeniably broad language to define arrest record and directed us to liberally construe the WFEA "to encourage and foster to the fullest extent practicable the employment of all properly qualified individuals regardless of … arrest record." WIS. STAT. § 111.31(3). Wisconsin legislators and judges used "offense" to describe both criminal and noncriminal violations of law for decades prior to the WFEA's enactment. Given the widespread usage of that term, and the intended breadth of the arrest record discrimination prohibition, I can discern no reason why the legislature would intend the statute's application to turn on whether an employee is charged under a criminal statute or a municipal ordinance.

## IV.

¶46 Lastly, I address the concurrence's contention that the District discharged the Cotas based, in part, on its "belief" that they had taken scrap money after its own investigation. An unsubstantiated suspicion is not enough to support the limited defense to arrest record discrimination set forth in *City of Onalaska*. In that case, we held that an employer does not unlawfully discharge an employee based on the employee's "arrest record" if the employer concludes from its own

---

The second reason why the concurrence's reading of "refuse to employ" in WIS. STAT. § 111.335(2)(b) is not persuasive is that it is directly at odds with the purpose of the arrest record prohibition, which is to protect employees from termination based on unproven allegations. Consistent with that purpose, § 111.335(2)(b) limits the actions an employer can take when an individual is charged criminally and the charge substantially relates to the job. If the individual is being considered for the job, the employer can refuse to hire the individual. If the individual is already an employee, the employer can suspend the individual. But to give effect to the statute's purpose, § 111.335(2)(b) does not allow the employer to terminate the individual's employment based on a pending criminal charge. Again, as noted above, the employer may base its decision to terminate the employee on its own investigation of the employee's conduct. And, if the person is convicted, the employer may terminate the employee. *See* WIS. STAT. § 111.335(3)(a)1. The legislature's determination to limit the pending charge provision to criminal offenses is not unreasonable.

16

independent investigation and questioning of the employee that the employee has, in fact, committed an offense. *City of Onalaska*, 120 Wis. 2d at 367.

¶47 In the present case, the facts are undisputed that the District did *not* determine that the Cotas had, in fact, committed theft from its own independent investigation. The human resources director who made the termination decision, Pam Casey, repeatedly stated that the District's investigation was inconclusive. She confirmed that the District relied on the municipal citations and the prosecutor's statement that he believed the Cotas were guilty and would enter into a plea agreement dismissing the charges in exchange for a "restitution" payment of $500 in deciding to terminate the Cotas' employment. LIRC's factual finding that the District made the discharge decision because of the municipal theft citations and statements of the prosecutor is supported by substantial evidence.[7]

¶48 Among LIRC's detailed findings of fact, which are undisputed, are the following:[8]

- After the Cotas raised concerns about co-worker Garret Loehrer's performance, Loehrer received negative performance reviews in 2012 and 2013 as a result of the Cotas' complaints. After the Cotas questioned whether Loehrer turned in scrap money, Loehrer stated: "If I'm going down, they are too!" Loehrer then accused the Cotas of splitting money from the sale of scrap with him in 2012, with Loehrer receiving $80.

---

[7] The concurrence recognizes that, in an employment discrimination case, the basis for an employer's decision is a factual determination. *See Currie v. DILHR*, 210 Wis. 2d 380, 386, 565 N.W.2d 253 (Ct. App. 1997).

[8] LIRC's findings of fact were based on the District's own contemporaneous written statements, the timing of the District's actions, and the sworn testimony of the District's decision makers.

17

- The District conducted an investigation and Casey prepared a report stating that the District could not conclude that the Cotas committed theft of scrap money due to conflicting allegations.[9]

- Casey confirmed this conclusion when she testified that she did not believe, based on the District's internal investigation, that the evidence warranted termination of the Cotas' employment.[10]

---

[9] The 2014 report stated:

It appears that there are untruths being told by someone or by more than one person. The fact of the matter is that $5,683.81 of the District's money is missing. The recommendation being made is to keep Greg Cota, Jeff Cota, and Garret Loehrer on administrative leave (pay status to be determined) and turn this over to the Town of Oconomowoc for potential investigation. The District does not have the investigation authority to carry this investigation further, at this point. Employment-related disciplinary decisions can be better made following the conclusion of any criminal investigation. There can be no question that some employment action (and perhaps criminal action) is necessary here, in view of the evidence that this investigation has produced. *However, it is also clear that the ability of the Administration to determine which employee or employees are responsible for this cash shortfall is limited by the conflicting allegations which have been produced to the District during the course of this investigation.* (Emphasis added.)

[10] Casey testified:

Q       Okay. You're not aware of anything in any of the documents that have been presented in the case, including the police reports and your internal investigation, that puts any of the extra $4,200 on the Cota brothers, right?

A       Not specifically.

Q       Okay. Except for the money that Garret says he split?

A       And the petty cash, which is suspicious in my mind.

Q       But it wasn't suspicious enough in your mind to terminate the Cotas' employment at the conclusion of your internal investigation?

18

- The District did not discharge the Cotas after completing its internal investigation  Instead, the District referred the matter to law enforcement.  There are no facts to show that Casey did any additional investigation at any point in time after the 2014 report.

- A detective with the Town of Oconomowoc investigated the matter, and when she recommended issuing the municipal citations, Casey understood that the recommendation of theft charges was based solely on Loehrer's allegation that he and the complainants had split scrap money on one occasion in 2012.  No additional information regarding the Cotas was uncovered in the police investigation.

- The Cotas were terminated one day after Casey spoke with the prosecutor, who stated that he "believed he could convict the complainants, but never said what evidence he possessed that he intended to use to do so." The District also learned during that conversation about the proposal to dismiss the citations—nearly two years after the District completed its own investigation.

- In letters to the Cotas terminating their employment, Casey wrote that the District had "learned" that the Cotas "were, in fact, guilty of theft of funds from the School District."  Casey later confirmed she wrote that "*solely*" because the police cited the Cotas and the prosecutor pursued the case against them.  (Emphasis added).

- Casey acknowledged that the only "new information" that led to her decision to terminate the Cotas was the citations, the prosecutor's statements and anticipated settlement with a "restitution" payment.[11]

---

A       That's correct.

[11] Casey testified:

Q       The only new evidence or information that came to your attention was threefold, right?  Cotas were cited for municipal theft --

A       Um-hum.

19

- Casey acknowledged that she deferred to the police and the court system in order to make her final decision regarding termination because they were better equipped than the District to determine the Cotas' innocence or guilt.

¶49  Substantial evidence supports LIRC's factual finding that the District did not terminate the Cotas because it concluded, based on its own investigation, that they, in fact, committed theft.  To the contrary, the District waited for, and relied on, the citation, the prosecutor's statement, and the settlement agreement involving restitution of $500, to make its decision to terminate the Cotas.

¶50  Our decision in *Vega*, in which we applied the *City of Onalaska* defense, provides useful guidance.  There, we concluded that substantial evidence supported LIRC's findings that the employer "would have terminated Vega's employment based *solely* on his admissions to [the employer] that he had committed multiple felony-level sexual assaults."  *Vega*, 402 Wis. 2d 233, ¶2 (emphasis added).  Because the employer concluded from its own independent investigation that Vega had, in fact, committed those offenses, the *City of Onalaska* defense applied.  *Vega*, 402 Wis. 2d 233, ¶42.  Here, in contrast, the District stated repeatedly that it did *not* conclude from its own independent investigation that the Cotas had, in fact, committed theft.  Thus, LIRC appropriately concluded that the *City of Onalaska* defense to arrest record discrimination did not apply because it

---

Q       -- the prosecutor told you he believed he could convict them, and the prosecutor told you that he anticipated an agreement -- plea agreement would be reached?

A       That included restitution, correct.

Q       And those new pieces of information are what pushed you to make the decision to terminate, right?

A       Yes.

only applies if "the employer makes its decision to terminate based solely on its internal findings, without consideration of the arrest record."

¶51    We are not at liberty to reweigh the evidence, much less ignore it. *See Hilton ex rel. Pages Homeowners' Ass'n v. DNR*, 2006 WI 84, ¶25, 293 Wis. 2d 1, 717 N.W.2d 166; WIS. STAT. § 227.57(6) ("If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact."). "Substantial evidence does not mean a preponderance of the evidence." *Hilton*, 293 Wis. 2d 1, ¶16 (citation omitted). An agency's findings of fact may be set aside *only* when a reasonable fact finder *could not* have reached the findings from all the evidence before the agency, including the available inferences from that evidence. *Id.*, ¶25. Thus, we must uphold LIRC's factual determination that the District's decision to discharge the Cotas was based on the arrest record information if there is any evidence in the record that a reasonable mind might accept as adequate to support that conclusion. *See id.*, ¶16. Here, there is evidence that a reasonable mind would accept as adequate to support LIRC's conclusion that the District did not conclude that the Cotas committed the offense based on its own investigation—rather, it waited for, relied upon, and made the termination decision because of the citation and prosecutor's statements.[12]   In short, the decision to terminate was based on the unproven allegations and mere assertions of others.

¶52    For these reasons, I would affirm the circuit court's order denying the District's petition for review and affirming LIRC's decision.

---

[12] The concurrence appears to rely on some sort of mixed-motive analysis, but that analysis only applies if the employer bases a termination decision on both lawful and unlawful bases. *See Vega*, 402 Wis. 2d 233, ¶45. Here, the District's sole basis for discharging the Cotas was unlawful; thus, a mixed-motive analysis is not applicable.